## Fulkerson, By, et al. v. Akers.

(Decided November 3, 1911.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Third Division).

Automobiles—Injury to Boy on Street—Action for Damages—Negli-
gence of Both Parties—Offset.—The plaintiff, a boy 14 years old,
was struck by an automobile on a street in the city of Louisville,
fracturing his leg, for which he sued the owner for damages. The
court instructed the jury that "both the plaintiff and defendant
were under the duty to exercise ordinary care, and if both were
guilty of negligence there can be no recovery—one negligence off-
sets the other." Held, the court meant, so far as the plaintiff was
concerned and we cannot say the words were misleading, for the
weight of the evidence is to the effect that the automobile was
proceeding at a reasonable rate of speed and that warning of its
approach was given, but that plaintiff, who was intent on his play,
did not heed the warning but rushed suddenly in front of the
machine at a time and place when the chauffeur was utterly
powerless to prevent the accident.

J. S. RICHARDSON, H. O. WILLIAMS for appellants.

O'NEAL & O'NEAL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-
MISSIONER—Affirming.

The plaintiff, a boy fourteen years of age, while play-
ing on Third street, near Green, in the city of Louisville,
on December 17, 1909, was struck by an automobile be-
longing to Mrs. Frank Guthrie Akers. His leg was frac-
tured, and he brought this action against M. L. Akers and
Frank Guthrie Akers, his wife, to recover damages. M.
L. Akers testified that he did not own the automobile, nor
did he employ or pay the chauffeur. The trial court then
directed a verdict in his favor. Of this action of the
court there is no complaint. Upon submission of the
case the jury returned a verdict in favor of the defendant,
Frank Guthrie Akers. Plaintiff appeals.

It appears that plaintiff and two companions were
engaged in playing tag or catcher. Plaintiff had just run
from the east side of Third street to the west side. He
then started to run across the street again. He looked
behind to see if his companions were after him. Accord-
ing to his story he ran five or six feet in front of two
horses that were hitched to an express wagon. He got

by the horses all right, and was then five or six feet in front of the automobile which was being driven by Mrs. Akers' chauffeur. The front part of the automobile struck him and knocked him down. The rear wheel ran over his leg and broke it. After striking him the automobile ran 125 or 130 feet and was then turned into the curb. The automobile was running at the rate of 25 or 30 miles on hour. The horn on the automobile was not blown. These facts were testified to by plaintiff and one of his companions, and by a man who was about a half square down the street when the accident occurred.

According to the testimony for the defendant the express wagon was proceeding south on Third street, a little to the west of the center thereof. The automobile was also going in the same direction. When it reached the express wagon it pulled to the east side of the street for the purpose of passing the wagon. It passed the wagon at a distance of about a foot and a half from it. The plaintiff suddenly darted across the street right under the heads of the horses hitched to the express wagon. The driver of the wagon stopped the horses to prevent injuring the plaintiff. When plaintiff passed the horses he was either struck by the automobile, or slipped and fell to the ground and the rear wheel passed over his leg. Upon seeing plaintiff the chauffeur immediately turned his automobile to the left and ran into the curb. Had he not done this he would have run over plaintiff. According to the express driver the automobile was going at the rate of about four miles an hour. According to the chauffeur his speed was about seven or eight miles an hour. The chauffeur blew his horn as he came up behind the wagon, and also blew it just before plaintiff was injured. On account of the express wagon obstructing the chauffeur's view, he could not see plaintiff until he passed in front of the horses.

The court, in instruction No. 1, told the jury that it was the duty of the agent of the defendant, Frank Guthrie Akers, in charge of the automobile, to have his automobile under reasonable control, to give notice of its presence by the customary signal, to keep a lookout ahead for persons and vehicles on the street, and to exercise ordinary care to prevent injury to persons or vehicles on the highway at that time, and that if they believed from the evidence that defendant's agent, in charge of said automobile, failed to exercise any one or more of said duties, and that by reason of such failure plaintiff re-

ceived the injuries of which he complains, then the law was for the plaintiff and the jury should so find unless they should believe from the evidence that plaintiff, Harley Fulkerson, was himself guilty of negligence in the sense that he failed to exercise that degree of care for the own safety which children of his age, intelligence and discretion usually exercise under the same or similar circumstances, and that by reason of such failure he helped to bring about the injury of which he complains, and but for which he would not have been struck by the automobile.

Instruction No. 2 is the converse of instruction No. 1.

In instruction No. 3 the court told the jury that it was the duty of plaintiff, Harley Fulkerson, to exercise ordinary care for his own safety, and that in this case that meant that degree of care, which is usually exercised under the same or similar circumstances by persons of his age, intelligence and discretion, to protect himself from injury, and that if they believed from the evidence that he failed to exercise that degree of care for his own safety and that by reason of such failure he helped to cause or bring about the accident which resulted in his injury, and that he would not have been injured but for such failure on his part, then the law was for the defendant and the jury should so find, although they might believe from the evidence that defendant's employe in charge of the automobile was also negligent.

In instruction No. 4 the court defined ordinary care and negligence.

Instruction No. 5 properly stated the measure of damages.

It is admitted by counsel for appellant that the instructions given by the court properly presented the law of the case. It appears, however, that after argument of counsel and submission of the case and the jury had been out for some time, they expressed a desire to communicate with the court. Thereupon the judge called the jury before him and the jury asked the meaning of the latter part of the third instruction, to-wit: "Although you may believe from the evidence that the said defendant's employe in charge of the automobile was also negligent." The foreman of the jury said: "Suppose we believe that the defendant was negligent and that the plaintiff was also negligent; what is the law?" Thereupon the court instructed the judy as follows: "Both plaintiff and defendant are under the duty of exercising ordinary care.

The defendant has to exercise ordinary care as I have instructed you in instruction No. 1, and the plaintiff is under the duty of exercising ordinary care as I have instructed you in instruction No. 3. If the defendant is guilty of negligence and also the plaintiff, there is no recovery—one negligence offsets the other.''

It is earnestly insisted by counsel for appellant that the latter part of this instruction is fatally defective, in that the jury were told that, if both plaintiff and defendant were guilty of negligence, there could be no recovery because the negligence of the one offset that of the other, whereas the true rule is that, in order to defeat a recovery on the ground of contributory negligence on the part of the plaintiff, his negligence must have so far contributed to the accident that had it not been for such negligence on his part the accident would not have occurred. It must be borne in mind, however, that the court, in using the language referred to, used it in connection with the previous part of the instruction to the effect that the defendant had to exercise ordinary care as he had instructed them in No. 1, and that the plaintiff was also under the duty of exercising ordinary care as he had instructed them in No. 3. He had also defined negligence. Therefore, when the court said, ''If the defendant is guilty of negligence and also the plaintiff, there is no recovery— one negligence offsets the other,'' he meant, so far as the plaintiff was concerned, the negligence referred to in instruction No. 3. Considered in this light, and in connection with the facts of this case, we cannot say the words complained of were misleading, for the weight of the evidence is to the effect that the automobile was proceeding at a reasonable rate of speed and that warning of its approach was given, but that plaintiff, who was intent upon his play, did not heed the warning, but rushed suddenly in front of the machine at a time and place when the chauffeur was utterly powerless to prevent the accident.

Judgment affirmed.