## Crawford v. Southern Railway in Kentucky.

(Decided May 20, 1913.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Fences—Liability of Railroad Company for Killing or Injuring Stock Where It Fails to Fence Its Right of Way.—So much of section 809 of the Kentucky Statutes as provides that a railroad company shall be liable for one-half of the value of stock killed when it has not compensated the owner for fencing the right of way only applies to states of case in which no compensation has been paid for fencing and there has been no attempt on the part of the railroad company to comply with sections 1789-1799 of the Kentucky Statutes.

2. Fences—Railroad Fences—Purchase of Right of Way—Compensation to Land Owner.—Where a railroad company purchases the right of way and there is no reference in the deed to fencing, it will not be treated as having compensated the owner for fencing within the meaning of section 1796 of the statutes.

3. Fences—Railroad Fences.—When a railroad company undertakes to construct a fence on the division line betwen its right of way and the land of adjoining owners, it will be presumed to have done so in compliance with the provisions of sections 1789-1799; providing for the erection of right of way fences by railroad com-

panies, and its rights and liabilities will be controlled by these sections.

4. Fences—Character of Fence Railroad Companies Must Construct.—When a railroad company constructs a fence under the statute it must construct a good and lawful fence, as defined in section 1780 of the statute.

5. Fences—Maintenance of.—When a good and lawful fence has been constructed, the party constructing it is only required to exercise reasonable care to maintain it in a good and lawful condition.

6. Fences—Railroad Fence—Liability to Owner of Stock for Failure to Construct and Maintain Sufficient Fence—Duty of Owner to Exercise Reasonable Care to Protect Stock.—If a railroad company fails to construct a good and lawful right of way fence, or after constructing such a fence, it fails to exercise reasonable care to maintain it in a good and lawful condition, and by reason of its failure in either or both of these respects, stock are injured or killed by its engines or cars, it will be liable to the owner in the full amount of the loss he has sustained, unless the owner could, by the exercise of ordinary care, have prevented the stock from straying through the insufficient fence, or have saved it from being killed or injured after getting on the right of way, or he consents that the company may leave openings or defective places in the fence, or agrees on the character of fence to be constructed.

W. S. HOGUE for appellant.

E. LELAND TAYLOR, EDW. P. HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The petition for a re-hearing filed by appellee is granted, and the opinion heretofore delivered and reported in 150 Ky., 741, is withdrawn and the following opinion substituted in its place.

The appellant brought this suit against the appellee company to recover damages in a sum representing the value of a horse alleged to have been killed by the engine and cars of the appellee. The petition averred among other things that the horse was killed on the track of the railway company adjoining lands belonging to and in the possession of the appellant, and that no compensation was paid by the railway company for fencing the right of way through the land of appellant, and further averred that a fence constructed by the railway company along its right of way through the land of appellant had a gap or opening in it through which the horse went from the land of appellant on to the railroad track.

The answer of the railway company was a traverse, and on a trial before a jury there was a verdict and judg-

ment in favor of the railway company, followed by this appeal.

On the trial the evidence of the trainmen in charge of the train that killed the horse showed that the horse was killed in the night while wandering on the track, and that the collision resulting in his death could not have been avoided; and there was no witness or circumstances to contradict this evidence. Other witnesses for the railway company testified that sometime before the horse was killed, they built for it a fence along the line of the right of way on one side, and that in constructing the fence they left an opening for a gate at a private crossing, but that when appellant said she was not quite ready to have the gate put in, some wires were stretched across the opening to close it. It also appeared in evidence for the railway company that there was no fence on the opposite side of the right of way.

There was also introduced a deed showing that the railway company, when its road was being constructed, purchased from one of appellant's vendors a right of way through the land now owned by appellant for $2,300. The deed does not mention the subject of fencing, being merely a deed in the ordinary form, selling and conveying to the railway company a perpetual right of way over the land described in the deed.

The appellant, in her own behalf, testified that the employes of the railway company when they built the fence, left an opening in it for a gate over her protest, and that the horse that was killed strayed through this opening from her premises on to the track of the railway company. She also said that the railway company had never paid any compensation for fencing the right of way through her land..

To sum up the evidence, it showed (1) that the railway company built a fence on one side of the right of way through the land of appellant but left an opening in the fence for a gate, without the consent of appellant, and when she complained about it, only closed the opening by putting a few wires across it; (2) that there was no fence on the other side of the right of way through the land of appellant; (3) that the horse that was killed strayed from the pasture through the opening left for the gate and got on the right of way where it was killed by an engine; (4) that the trainmen were not to blame for killing the horse.

With the evidence in this condition, the court instructed the jury in substance that if the railway com-

pany negligently and over the protest of appellant left an opening in the fence built by it, and the horse that was killed went through this opening on to the track, they should find for the appellant, unless they believed that the appellant, knowing that the opening had been left in the fence, failed to exercise ordinary care to close it, and such failure on her part was the cause of the horse getting killed, in which case they should find for the railway company.

As the uncontradicted evidence of the trainmen showed that the killing of the horse was unavoidable, this exonerated the railway company from liability for his death, unless it is liable under statutes, to which we will presently call attention, and for reasons that will be hereafter stated. The sections of the Kentucky Statutes necessary to notice in disposing of this case are 809, 1780 and 1789-1799.

Section 809 provides that, "If, by the locomotive or cars of any company, cattle shall be killed or injured on the track of said road adjoining the lands belonging to or in the occupation of the owner of such cattle, who has not received compensation for fencing said land along said road, the loss shall be divided between the railroad company and the owner of such cattle; but in every case where cattle are killed or injured by the negligence or carelessness of the agents or servants of any company, it shall pay full damages for such killing or injury; and the killing or injury of cattle by the engine or cars of any company shall be prima facie evidence of negligence and carelessness on the part of the company, its agents and servants." This section has been long a part of the statute law of the state and was re-enacted and made a part of the chapter on Corporations that became a law in April, 1893.

In February, 1893, the Legislature passed an act relating to the fencing of railroads, and this act is sections 1789-1799 of the statutes, under the title "Railroad Fences." The second section of this act, which is section 1790 of the statutes, provides in part that every railroad owning a right of way "shall construct and maintain a good and lawful fence on one-half of the distance of the division line between such right of way and the adjoining lands except as is hereinafter provided; and that every owner of land or lands adjoining any right of way of such corporation or persons as aforesaid shall construct and maintain a good and lawful fence on one-half of the dis-

tance of the division line between such land or lands and such rights of way except as is hereinafter provided."

Section 1791 provides in substance that when either the railroad company or the adjoining land owner has built a "good and lawful fence" for one-half of the distance of the division line between the right of way and the adjoining land, the party so building may require the other party, in the manner pointed out in the section, to construct a good and lawful fence on the other one-half of the right of way.

Section 1792 provides in part that "The provisions of this act shall not apply in any case wherein any corporation or persons owning or controlling and operating such railroad has furnished the material to construct a fence, or condemned its right of way, and paid the owner or his vendor damages, in the estimation of which the cost of fencing was taken into consideration."

Section 1795 reads, "All laws and parts of laws governing the construction of farm fences are held hereby to apply to railroad fences in all cases where, by the provisions of this act, railroad corporations are required to fence their right of way."

Section 1796 reads, "That this act shall not apply to any land where the owner or his vendor has received compensation for fencing the same."

Section 1797 provides that, "When the owner of any land or lands, or any immediate or remote grantor or vendor of such owner, has given to the corporation or person owning or controlling and operating any railroad a right of way through such land or lands free of charge, then the entire fencing on the division lines between such lands and the right of way of such railroad shall be done by and at the cost of the corporation or person owning or controlling and operating such railroad, said fencing to be done as required by this act."

Under the title "Farm Fences" a lawful fence is described in section 1780 as follows: "Every strong and sound fence of rails, or plank, or wire, or wire and plank, or iron, or of hedge, four and one-half feet high, and being so close that cattle cannot creep through or made of stone or brick, four and one-half feet high, or a ditch three feet deep, and three feet broad, with a hedge two feet high, or a rail, plank, stone, smooth or barbed wire, or brick fence two and one-half feet high on the margin thereof, the hedge or fence being so close that cattle cannot creep through, shall be deemed a lawful fence."

It will be observed that under section 809 when cattle are killed on land adjoining land belonging to or in the occupation of the owner of the cattle, and no compensation has been paid by the railroad company for fencing the land, it must pay one-half the value of the cattle, whether they were killed by the negligence of trainmen or not, while sections 1789-1799 do not mention the liability of the company for killing stock.

In view of this condition of the statutes, the first question that naturally suggests itself is, does the duty and liability of the company in this case arise under section 809 or under sections 1789-1799? Upon this point we have reached the conclusion that section 809 is not applicable to the facts of this case and that the duty and liability of the company falls under sections 1789-1799. Section 809 only applies to states of case in which no compensation has been paid for fencing and there has been no attempt on the part of the railroad company to comply with sections 1789-1799 by constructing, as provided in those sections, a fence on one-half of the division line between the right of way and the land of the adjoining owner. If a railroad company has not constructed any right of way fence, then its liability for one-half the value of stock killed is to be determined by the provisions of section 809, but if a railroad company constructs or attempts to construct, as it did in this case, a right of way fence, then its duty and liability is to be adjudged by sections 1789-1799 and not by section 809; so that we may dismiss from further consideration all reference to section 809.

There is no suggestion in the record that there was any agreement between the land owner and the railway company as to the construction of fences along the right of way in question, and so section 1798, providing that railroad companies and land owners may agree as to the construction of fences, has no applicability to this case; nor has section 1792, as the railway company did not condemn a right of way or furnish the land owner with material to construct a fence

It is, however, earnestly insisted by counsel for appellee that the fence law contained in section 1789-1799 is not applicable, because the appellant or some of her vendors received compensation for fencing the land, and this consideration, as provided in section 1796, exempted the railway company from the duty of constructing any fence under this law. In Owensboro and Nashville R. R. Co. v. Townsend, 107 Ky., 291, the court had a question substantially like this. In that case it was insisted for the

railroad company that as it bought the right of way through the land for $290, it was relieved from the operation of sections 1789-1799 by virtue of section 1796 providing ''That this act shall not apply to any land where the owner or his vendor has received compensation for fencing the same.'' But the court in declining to accept this view said:

''There is nothing in the deeds about fencing. Each is simply a conveyance, with warranty, of a certain strip of land. Such a deed to a railroad company is not to be distinguished from a similar one to a private person. If these deeds had been made to an individual, it is clear that they would have passed nothing but the land embraced by them, and the rights of the parties as to fencing would be determined by the laws in force on that subject. Upon a sale of land by one person to another, the vendee takes under his deed no right as to the future fencing, and in such a case a vendor and vendee stand just as any other two adjoining proprietors. There is nothing in the deed before us to distinguish these grants from the ordinary conveyances made by one person to another. In order for appellant to bring itself within the statute quoted, it must show affirmatively that the owner or his vendor in fact received compensation for fencing the land.'' The same conclusion was reached in Owensboro & Nashville Ry. v. Courts, 109 Ky., 154.

As the duty and liability of the railway company in respect to the fencing was not fixed by agreement with the land owner, and it did not compensate the land owner for fencing, or condemn a right of way, or furnish the land owner material to construct a fence, and in one of these ways secure exemption from the statute, it occu-pies the position of having constructed or attempted to construct on one-half of the division line between the right of way and the land of appellant a good and lawful fence as provided for in sections 1789-1799, to which reference has been made, and consequently its liability in this case must be determined by a consideration of its duty under these sections.

At this point we may say that the fence was constructed by the railway company voluntarily, and that it did not, so far as the record shows, attempt to compel the appellant to construct a fence on the opposite side of the right of way, and it is also shown that there was no fence on the other side of the right of way; but these circumstances do not affect the question of the liability of the company. Whenever a railroad company undertakes, as

the appellee did, to construct a fence on the division line between its right of way and the land of an adjoining owner, it will be presumed to have done so in compliance with sections 1789-1799 of the statute, providing for the erection of right of way fences by railroad companies, and so we will treat this fence as one constructed by the railroad company under the statute and ascertain its duty and liability accordingly.

The statute provides that the fence erected shall be "a good and lawful fence," and further provides that all laws and parts of laws governing the construction of farm fences apply to railroad fences; so that we must turn to section 1780, relating to farm fences, for the purpose of ascertaining what is a good and lawful fence, as when a railroad company or a land owner undertakes to construct a right of way fence, that kind of fence described in section 1780 must be constructed.

It will further be observed that the statute provides that the party constructing the fence shall also maintain it, and although it is essential that the character of fence described in section 1780 should be constructed to satisfy the statute, we do not think the party constructing the fence is required at all hazard to maintain a good and lawful fence. When a good and lawful fence has been constructed, the party constructing it is only required to exercise reasonable care to maintain it in such a manner as answers the description of a good and lawful fence as defined in section 1780 of the Kentucky Statutes: Elliott on Railroads, vol 3, sec. 1185; Illinois Central Railway Co. v. Dickerson, 27 Ill., 55, 79 Am. Dec., 394; Coe v. Northern Pacific Railroad Co., 101 Minn., 12, 11 L. R. A., (n. s.), 228, 11 Ann. Cases, 429. But when a good and lawful fence is constructed, the duty of exercising reasonable care to maintain it as a good and lawful fence continues until the parties have, by some agreement, modified, or abrogated the statutory provisions.

Coming now to define more accurately the liability of a railroad company to the owner of stock if it fails to perform its duty in constructing and maintaining a right of way fence, we find that there is no statute law on the subject. Section 1783 of the Kentucky Statutes, in the article relating to farm fences, defines the liability of the owner of stock to an adjoining proprietor for damages suffered by reason of the stock trespassing upon his premises on account of the failure of the owner of the stock to maintain a sufficient fence, but this statute does not treat of the liability of a land owner to the owner

of stock that are injured or killed on his premises to which they go because of his failure to construct or maintain a sufficient fence.

In the absence of statutory regulation we must turn to common law principles, and there we find ample authority for the proposition that the land owner on whose land stock are permitted to come by reason of his failure to construct and maintain a sufficient fence, is liable to the owner of the stock for such damages as he might fairly and reasonably anticipate they would suffer by coming on his premises.  Sherman & Redfield on Negligence, vol. 1, sec. 662; Saxton v. Bacon, 31 Vt., 540; Cate v. Cate, 50 N. H., 144, 9 Am. Rep., 179; Fennell v. Sequin St. R. Co., 70 Tex., 670; Pitzner v. Shinnick, 41 Wis., 676. The reason for this rule is that the obligation to construct and maintain fences is in the nature of a statutory contract duty, and therefore the party failing to observe it is only liable for such damages as a prudent person might reasonably anticipate would follow from such failure.

But in determining the liability of a railroad company through whose fault stock are permitted to stray on the right of way, it is obvious that any prudent person would fairly and reasonably anticipate that stock wandering on the right of way would be injured or killed by passing trains, and therefore it should be ruled as a matter of law that a railroad company is liable for the full damage sustained by the owner of stock killed or injured by its failure to construct and maintain a sufficient fence as herein defined, unless the owner, by his failure to exercise ordinary care to prevent them from straying on the right of way, relieves the company from liability.

This was the view expressed by this court in McGhee v. Gaines, 98 Ky., 182, where, in speaking of the liability of a railroad company for its failure to erect and maintain cattle guards under section 1793 of the statutes, providing in part "that all corporations and persons owning or controlling and operating railroads as aforesaid, shall erect and maintain cattle guards at all terminal points of fences constructed along their lines," * * * the court said: "There can be no doubt of the proposition that if the company is in default in the performance of a legal obligation, as by neglect to maintain a fence or cattle guard where stock may stray on the track, proof of such default and of the cattle coming on at such a place and being killed will suffice to render it liable for the damages."  To the same effect are McGhee v. Guyn, 98 Ky.,

209, and Parrish v. Louisville & Nashville R. R. Co., 126 Ky., 638.

We, therefore, hold that if a railroad company undertakes to construct a right of way fence under the statute, as the company in this case did, and it fails to construct a good and lawful fence as herein defined, or, after having constructed such a fence, it fails to exercise reasonable care to maintain it in a good and lawful condition, and by reason of its failure in either or both of these respects stock get through or over or under the fence so defectively constructed or so defectively maintained, and are injured or killed by engines or cars of the company, it will be liable to the owner of the stock in the full amount of the loss he has sustained unless the loss is due to the failure of the owner to exercise ordinary care to prevent the stock from straying through the insufficient fence or to save it from being killed or injured after getting on the right of way, or the owner consents that the railroad company may leave openings or defective places in the fence, or agrees on the character of fence to be constructed.

Having the foregoing views of the law applicable to the case, we think the instructions were erroneous and prejudicial. The jury should have been told in substance that it was the duty of the railway company, when it undertook to construct this fence, to construct a good and lawful fence (defining such a fence) for the entire distance over which the fence was built, and that if without the consent of appellant it left an opening in this fence or left a place that was not occupied by a good and lawful fence, and the horse escaped through this opening or defective place from the pasture to the right of way, where it was killed, they should find for appellant the full value of the horse, unless they believed from the evidence that the killing of the horse was due to the failure of appellant to exercise ordinary care to prevent the horse from straying through the opening or defective place, or to save it from being killed after getting on the right of way, and that except for the failure to exercise such care, the horse would not have been killed.

The judgment is reversed, with direction for a new trial in conformity with this opinion.