Affirming.
Appellee, Calloway, sued the railroad company to recover $3,000.00 for a shorthorn herd bull killed by the railroad company, on its track adjacent to his farm in Henry county, and recovered a verdict for $2,000.00, and the railroad company appeals.
Appellee is a breeder of shorthorned cattle, keeping a large herd of cows and one or more bulls for the purpose. His farm adjoins the right of way of appellant railroad company for several hundred yards. He had owned this farm for six or seven years before the bull was killed. Before he purchased the farm the railroad company, according to the averments of the pleadings and the evidence, bad erected a woven wire fence on the line between its right of way and the lands now owned by appellee, Calloway, and since that time had attempted to maintain it. The fencing of the right of way of railroads is governed and controlled by section 1789 to and including section 1799, Kentucky Statutes. In certain cases, however, the recovery for cattle killed by trains on railroad tracks is controlled by section 809, Kentucky Statutes, but we think this section has no application to the facts of this case. According to the pleadings and proof of appellee, Calloway, the railroad company had allowed the fence built by it on the right or way to fall into bad repair, and fit the time of the killing of the bull was not a lawful fence within the meaning of section 1780, Kentucky Statutes. This action was prepared and tried upon the theory that where the railroad company erects it fence along its right of way and between its right of way and the farm lands of another, and attempts or pretends to maintain the fence it becomes its duty to maintain it as a lawful fence within the terms of section 1780, and if it fails to do so and stock on the adjacent farms wander from the fields through or over the defective fence onto the railroad track and are killed by trains, through no negligence of the owner of the cattle, the railroad company is liable. This view finds support in the opinion in the case of Crawford v. Southern Railroad Company,153 Ky. 812. This principle, however, is challenged by the railroad company in this case, it being asserted for the railroad company that the opinion in the Crawford case should be overuled because it disregards section 809, and devolves a duty upon the *Page 238 
railroad company to pay full damages for stock killed by the train without negligence where it gets on the track through an inadequate fence constructed and maintained by the railroad company.
In its answer the railroad traversed the averments of the petition as to negligence in the maintenance of the fence and the operation of its trains, and denied its liability in toto.
In a second paragraph it pleaded that the division fence of which complaint was made in the petition "was and is a division fence constructed on the division line between the right of way of this defendant and the tract of land owned by the plaintiff mentioned and described in the petition; that it owned, controlled and operated its line of railroad over said right of way for more than ten years immediately preceding the date and event set out in the petition, and that it was thereby put on equal terms and obligations with other landowners owning adjacent lands in this Commonwealth, and with the plaintiff." It was further averred in the second paragraph of the answer that the plaintiff, Calloway, was under legal obligation to build and maintain a lawful fence on one-half of the division line between his land and the right of way of the railroad company; that he owned, managed, conducted and lived upon his farm for a number of years before the death of the bull, and that he was, therefore, fully acquainted with the defective condition of the fence during all of that time but that he never constructed or offered to construct, repair or keep in condition one-half or any portion of the division fence, and it was further averred that it was his duty to maintain and keep one-half of the division fence, and his failure to do so estopped him to claim or assert damages against the railroad company for the loss of the bull. To this paragraph the trial court sustained a general demurrer, and we think properly, because it is not averred that the railroad company had theretofore called upon appellee, Calloway, to build one-half of the fence or to maintain or repair it; nor was it averred that appellee, Calloway, had originally constructed one-half of the fence or that he had failed or neglected to keep in repair an equal amount of division fence between his lands and the right of way. The averments of the pleadings must be construed strongest against the pleader, and when that is done in this case the second paragraph of the answer was subject to demurrer. *Page 239 
In Crawford v. Southern Railroad Company, supra, the facts were somewhat similar to those in the case now under consideration. The railroad company had undertaken in that case to construct a fence along its right of way and between the right of way and the lands of Crawford, but in doing so it left a gap or open space in the fence, over the protest of Mrs. Crawford, the owner of the adjoining land. To fill the gap the railroad company put up a few strands of wire and the horse of Mrs. Crawford passed through the gap onto the railroad track and was killed by a train, and we held the railroad was liable. In that case, we said:
 "At this point we may say that the fence was constructed by the railway company voluntarily, and that it did not, so far as the record shows, attempt to compel the appellant to construct a fence on the opposite side of the right of way, and it is also shown that there was no fence on the other side of the right of way; but these circumstances do not affect the question of the liability of the company. Whenever a railroad company undertakes, as the appellee did, to construct a fence on the division line between its right of way and the land of an adjoining owner, it will be presumed to have done so in compliance with sections 1789-1799 of the statute, providing for the erection of right of way fences by railroad companies, and so we will treat this fence as one constructed by the railroad company under the statute and ascertain its duty and liability accordingly."
In the case of McGee v. Gaines, 98 Ky. 182, it was said:
 "There can be no doubt of the proposition that if the company is in default in the performance of a legal obligation, as by neglect to maintain a fence or cattle guard, where stock may stray on the track, proof of such default and of the cattle coming on at such a place and being killed, will suffice to render it liable for the damages."
In accordance with this principle it was said in the Crawford case, supra:
 "But in determining the liability of a railroad company through whose fault stock are permitted to stray on the right of way, it is obvious that any prudent person would fairly and reasonably anticipate *Page 240 
the stock wandering on the right of way would be injured or killed by passing trains, and therefore it should be ruled as a matter of law that a railroad company is liable for the full damage sustained by the owner of stock killed or injured by its failure to construct and maintain a sufficient fence as herein defined, unless the owner, by his failure to exercise ordinary care to prevent them from straying on the right of way, relieves the company from liability."
After reviewing the authorities and carefully considering the facts of the case the court in the Crawford case concluded the opinion, except for the paragraph upon the instructions, with this sentence:
 "We, therefore, hold that if a railroad company undertakes to construct a right of way fence under the statute, as the company in this case did, and it fails to construct a good and lawful fence as herein defined, or, after having constructed such a fence, it fails to exercise reasonable care to maintain it in a good and lawful condition, and by reason of its failure in either or both of these respects stock get through or over or under the fence so defectively constructed or so defectively maintained, and are injured or killed by engines or cars of the company, it will be liable to the owner of the stock in the full amount of the loss he has sustained unless the loss is due to the failure of the owner to exercise ordinary care to prevent the stock from straying through the insufficient fence or to save it from being killed or injured after getting on the right of way, or the owner consents that the railroad company may leave openings or defective places in the fence or agrees oil the character of fence to be constructed."
Appellee, Calloway, contends in this case and introduced proof to support his contention that lie complained to the agents of the railroad of the condition of the right of way fence and explained to the agent of the railroad company that his stock was getting out of his fields on to the railroad track, and in each case the railroad company, through its agent, agreed and promised to repair the fence; that later his stock went on to the tracks and the agents of the company drove it back into the fields; that after plaintiff complained to the agents of the company about the insufficiency of the fence several times *Page 241 
the company sent its agents to repair the fence and it did repair a long stretch of it but failed and neglected to repair a short space along the lot where appellee's bull was confined. Later when appellee, Calloway, again complained, they sent a crew of men to repair this fence along the bull lot, and appellee seeing them at the job went out and talked with them about it and they continued to work at it, and he believed, as he testified, that the fence had been completed, and relying upon the promise of the railroad company to repair the fence and upon its attempt to do so, and the presence of the gang of men working at the fence appellee concluded that the fence had been repaired and turned his fine shorthorn bull from the barn into the lot and that the bull was docile and quiet and possessed no breachy habits, but the railroad company having failed to repair the fence, the bull passed over the gap or defect in the fence onto the railroad track and was killed by a train of the railroad company. He testified that he had kept his bull up for weeks awaiting the action of the railroad company in repairing the fence and that upon its assurance that the fence would be repaired, and the appearance of the gang of men at work at the fence, repairing it, he concluded that the fence had been repaired, and turned his bull into the field. The question is, was appellee, Calloway, guilty of such negligence or want of ordinary care in turning the bull into the field without investigating to see if the fence had been built, as would defeat his recovery? If the owner was guilty of contributory negligence or failed to exercise such care as a reasonably prudent person under the circumstances would have exercised with respect to his cattle in turning the bull into the field next to the right of way of the railroad company without examining the fence, he was not entitled to recover; but this was a question of fact which was properly submitted to the jury, the court directing the jury that it was the duty of the railroad company, when it undertook to construct the wire fence mentioned in the petition between the defendant's right of way and the lands of the plaintiff, to construct a good and lawful fence for the entire distance over which the fence was built, and to exercise reasonable care to maintain it as a good and lawful fence. The court further told the jury that if it believed from the evidence that the defendant failed to construct a good and lawful fence, or after having constructed such fence *Page 242 
failed to exercise ordinary care to maintain it in a good and lawful condition, and by reason of its failure in either or both of these respects plaintiff's bull escaped through or over this fence so defectively constructed or so defectively maintained, and was killed, to find for the plaintiff, otherwise to find for the defendant; and the court further instructed the jury that if it believed from the evidence that the plaintiff, Calloway, was guilty of negligence and his negligence, if any, so contributed to the injury of the bull, that but for which it would not have been killed, the jury should find for the defendant company. These instructions, we think, properly presented every issue of fact to the jury.
Appellant company insists, however, that a more concrete instruction on contributory negligence should have been given. It offered instruction "A," which in substance told the jury that if it believed from the evidence that plaintiff carelessly and negligently permitted his said bull to run loose in lots and pastures separated from defendant's right of way only by the fence described in the evidence, without making any effort to restrain him or to repair or strengthen said fence, and that plaintiff's said carelessness and negligence so contributed to said happening that but for his carelessness and negligence said bull would not have gotten onto defendant's right of way, or been killed or injured, the jury should find for the defendant, which is in substance the same as that given by the court, except it is somewhat longer and is not in all respects based upon the evidence. We think the court properly refused instruction "A."
It is next complained that the verdict for $2,000.00 is excessive. For appellee, Calloway, it was shown by persons fully acquainted with shorthorn cattle market that the bull killed by the railroad train was a thoroughbred shorthorn "herd bull" of high qualities, and of recognized pedigree; that he weighed 2,000 pounds; was deep red in color and a fine service bull. His value was fixed by several such persons as high as $3,000.00. Others valued him at a less sum. We think the evidence of these expert cattlemen, acquainted with the value of bulls of the breed of cattle to which this bull belonged, was sufficient to warrant the jury in fixing the value of the bull at $2,000.00. Certainly the verdict is not against the weight of the evidence. It is said, however, by counsel for the railroad company that it was denied the privilege of proving that appellee, Calloway, had listed his entire *Page 243 
herd of shorthorn cattle in the previous year at $1,000.00 for taxation and that this included the bull, and that the sustaining of the objection to this evidence by the trial court was prejudicial error. Such evidence is of little or no probative value. "While such evidence is admissible, yet in view of the fact that it throws but little light on the actual value of the property assessed, and necessarily, has but small weight with the jury, we conclude that its rejection was not prejudicial. L. N. R. R. Co. v. White Villa Club, 155 Ky. 452." S. V. E. R. Co. v. Bentley, 161 Ky. 560. It is doubtful whether the value fixed by in owner of cattle when he lists it for taxation for a given year, can be shown in evidence in a subsequent year, to contradict the owner as a witness upon the question of value, for it is a well known fact that the owner of such property in listing it for taxation scarcely ever fixes the value at anything like the price at which he would sell the property; and, too, live stock, such as the bull in question, he being only about three years of age at the time he was killed, increases rapidly in value, especially when it is discovered that the get of such bull is regular, uniform and of high quality and sells for fancy prices.
A review of the record discloses no error prejudicial to the substantial rights of appellant company.
Judgment affirmed.