## Louisville & Nashville Railroad Company v. Vandiver.

(Decided May 15, 1931.)

ASHBY M. WARREN, GEORGE J. HEROLD and MATT HEROLD for appellant.

HUBBARD SCHWARTZ and H. O. WILLIAMS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

On May 6, 1922, Wright Vandiver sued the Louisville & Nashville Railroad Company for damages alleged

to have been done to his land by the diversion of the waters of the Licking river. The case finally came on for trial on June 12, 1930, and resulted in a judgment against the railroad company for $1,000, and it appeals.

Rivers never pursue a straight course, but meander about; still the general course of Licking river is from the south to the north, and we shall speak of it in this opinion as so flowing. It is the dividing line between Kenton county and Campbell county. Grassy creek also meanders, but we will speak of it as flowing from west to east, and it empties into the Licking river at or near the dividing line between Kenton county and Campbell county. The village of Demossville is situated on the Pendleton county side of this creek near its mouth. The Louisville & Nashville Railroad Company has a line of railroad running along the west bank of Licking river and crossing Grassy creek at Demossville near the mouth of the creek. To cross this creek the railroad company built a bridge with piers upon the south side and the north side of this creek. The pier upon the south side of the creek gave trouble. It was inclined to sink, and for years the railroad company, with commendable care, has kept it under almost daily observation. About the year 1909 the railroad company placed in Grassy creek around and about the pier on the south side thereof several carloads of very large stones of such size it would take several horses to move one of them.

Some time about the years 1917 or 1918, during a very low stage of the Licking river, there occurred a heavy rainfall, upon the watershed of Grassy creek, so that, in view of the stage of the river and the high tide in Grassy creek, the water carried these stones away from their location around this pier and deposited them on a sand bar in the Licking river just below the mouth of Grassy creek.

There had been a sand bar at this place for years, it was usually composed of silt, sand, and small stones brought down by the creek during high tides of it, and these sand bars thus composed were usually cut out and carried away by the next high tide in the Licking river, but, after these large stones were carried onto this sand bar, the high tides of Licking river were unable then to cut out and carry away the bar re-enforced as it was by these enormous stones.

The result was this bar began to grow both in size and in height. Very accurate soundings, measurements,

and levels of Licking river were made by the United States government about the year 1900, and, from a comparison made with those measurements, with levels and surveys of the premises as now, taken from the old bench marks, it has been found that the height of this sand bar has been raised six feet or more and the bar has been extended so that it is now about two acres in extent, and the stream or flow of the Licking river has been narrowed so that at ordinary stages of the water it pursues a channel near the Campbell county bank that is very much narrower than the usual channel of the river, and is referred to in the record as "the riffles."

Vandiver's land lies in Campbell county just opposite the mouth of Grassy creek, and it is alleged· that, as a result of the things we have recounted, the waters of the Licking river, being thus confined to a narrowed channel, have in periods of high water in the river broken over the banks and flowed across his land so that it was washed thereby. About five acres of Vandiver's land has been destroyed by this washing. His land has been cut in two, the banks have slipped in, and so forth.

The railroad company asks for a reversal of this judgment because the court erred, so it says, in refusing to direct the jury peremptorily to find a verdict for it. This contention is bottomed on the claim that this damage was a result of an unusual and unprecedented rainfall in the year 1921, but, while there was evidence that this was a heavy rain, there was also evidence that such rains had occurred before in this community and were to be expected; hence it was a question for the jury under a proper instruction.

The court submitted this question to the jury under this instruction:

"If the jury believe from the evidence that the damage complained of was caused and brought about by an unusual and heavy rainfall causing a freshet in Grassy Creek and thus forcing the rocks described in the evidence out of the mouth of the creek, thus forming a barrier and diverting the water of the Licking River, as described in the evidence, then the law is for the plaintiff, if you also believe from the evidence that the rocks so forced out of Grassy Creek were negligently and carelessly placed there by the defendant, Louisville & Nashville Railroad Company, and but for such negligent and careless

dumping of said rocks in the mouth of said creek the damage to plaintiff's farm would not have and could not have occurred."

The railroad company is complaining of this instruction because, as it says, this instruction tells the jury that these rocks formed a barrier and diverted the water of the Licking river when that was a question to be determined by the jury and not by the court. We are unable to so read the instruction, for the instruction required the jury, if it found these rocks were brought out of the mouth of the creek by an unusual rainfall, and if it found they thus formed a barrier and diverted the water, to also find that the rocks had been negligently and carelessly placed in the creek by the railroad company, before they could find for the plaintiff.

This instruction merely gave the law as the court has written it in the case of Cohen & Stryck v. Home Tel. Co., 179 Ky. 107, 200 S. W. 344, 345, where a similar defense was made, and this court said:

"The general principle under facts somewhat analogous was recognized and applied by this court in the case of Evans v. Eastern Kentucky Telephone & Telegraph Co., 124 Ky. 620, 99 S. W. 936, 30 Ky. Law Rep. 833. The fact that lightning is an act of God is not allowed to excuse the company when its negligence co-operating with the lightning produced the injury and loss complained of, for it is everywhere recognized that where the negligence of a responsible person concurs with an act of God in producing an injury, the one guilty of the negligent act will be liable for the consequences, as the injury would not have happened but for his negligence. . . . The rule is rested upon the idea that it is the duty of the one guilty of negligence to anticipate such an act of God and to exercise reasonable care to guard against and prevent such act from producing injurious consequences."

Under similar defense, in Lexington Utilities Co. v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173, 1175, we said this:

"On this proposition, we think, Cooley, in his work on Torts (page 76, 3d Ed.) states the rule correctly: 'If the original act was wrongful, and would naturally, according to the ordinary course of

things, prove injurious to some other person or persons, and does actually result in injury through the intervention of such other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent.

A similar question arose in Fulkerson v. Akers, 145 Ky. 187, 140 S. W. 167, and again the question was decided adversely to the railroad company, and that decision was rested on a quotation of Biglow on Torts, p. 180, and on other authorities.

In view of these authorities, we conclude the court did not err in refusing instruction No. 1, offered by the railroad company, nor did the court err in refusing its offered instruction No. 2, by which it sought to have the jury apportion the damages and say what part was produced by natural causes and what part was caused by the placing of the rock in the creek, because the court by its instruction has limited the recovery against the defendant to those damages that had resulted from the placing of the rock in the creek.

The final contention of the railroad company is that the court erred in refusing to permit it to put in evidence the assessor's book of Campbell county to show the value placed by Vandiver upon his property for taxation during the years that it is claimed the damage was done.

Vandiver lived in Cincinnati, Ohio. The evidence indicates that he did not actually list this property, himself, but it was listed by some one else. The assessment list would only be admissible after it had been shown that Vandiver had himself listed this property, and that was not shown.

The judgment is affirmed.