## Davidson et ux. v. Commonwealth ex rel. State Highway Commission.

(Decided June 2, 1933.)

B. J. BETHURUM for appellants.

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, and GLADSTON WESLEY and E. T. WESLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a condemnation proceeding, instituted in the Pulaski county court by the commonwealth of Kentucky on relation of its state highway commission against defendants and appellants, G. Y. Davidson and wife, for the purpose of condemning 8.31 acres of land on the banks of the Cumberland river located in the outer edge of the corporate limits of the city of Burnside, Ky., and to be used and appropriated in the construction of the southern approach to a toll bridge to be built across Cumberland river at that point. The right of way of the approach requires only 1.25 acres, and the remainder of the amount sought to be condemned, consisting of

slightly more than 7 acres, is necessary, and to be used for the digging of borrow pits to obtain earth to construct the levy of the elevated approach to the bridge. It is not denied but that it is necessary for that purpose if the approach is to be constructed in that manner. Neither is the necessity for the amount of land sought to be condemned for the right of way denied. The viewers appointed by the county court reported the total amount of damages to the owners of the land taken at $1,800, which was apportioned to each of the three small parcels sought to be condemned, allowing $1,500 for the seven and a fraction acres for borrow pit purposes.

Defendants filed exceptions to that report which the county court overruled, and they prosecuted an appeal to the Pulaski circuit court. Upon trial therein before a jury it returned a verdict in favor of plaintiffs in the sum of $2,500, for which judgment was rendered. Defendants' motion for a new trial was overruled, and they prosecute this appeal. In seeking a reversal of the judgment, their counsel argue as grounds therefor: (1) Error of the courts in permitting the commonwealth to introduce in the manner it did the assessment list for taxation purposes made in the year preceding the trial; (2) that the verdict is flagrantly against the evidence; (3) that the necessity for the taking of borrow pits was not properly shown, and (4) error of the court in hearing the evidence of the necessity for the taking before the court and in the absence of the jury. They will be considered and determined in the order named.

■ It is the settled rule in this jurisdiction that in actions of this nature, and others involving damage to real estate, the assessment list for taxation made by the owners for immediately preceding years is competent evidence on the amount of damage sought to be recovered, but its weight and effect is to be determined entirely by the jury trying the case. Louisville & N. R. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983; Sandy V. & E. R. Co. v. Bentley, 161 Ky. 560, 171 S. W. 178, 180; Louisville & N. R. R. Co. v. Calloway, 213 Ky. 235, 280 S. W. 966; Commonwealth, by, etc., v. Combs et al., 229 Ky. 627, 17 S. W. (2d) 748; Davisworth v. S. T. & J. M. Wright, 229 Ky. 572, 17 S. W. (2d) 756. Other cases and authorities are referred to in those opinions. But it is insisted that such evidence was rejected by this court as incompetent in the case of

Louisville & N. R. R. Co. v. Vandiver, 238 Ky. 846, 38 S. W. (2d) 965, where the owner, at the date of the assessment list sought to be introduced, was a nonresident of the state and the list was made and executed by another without the owner possessing any knowledge thereof; but the question in that case, even in that form, was not presented in the manner that it was in this one. The trial court therein under such circumstances declined to admit the evidence, and the appellant, railroad company, therein was complaining of that ruling on appeal. We declined to reverse the judgment because of that alleged error, but in doing so we held that under the circumstances it was an erroneous ruling of the trial court, but it was not of sufficient materiality to alone authorize a reversal. But, if we should accept the brief unqualified statement contained in that opinion as universally applicable under similar facts, it would not follow that the same evidence was incompetent in this case, in view of the circumstances under which it was introduced.

The proof showed that the father of appellant G. Y. Davidson purchased the land in controversy in 1926 and had it conveyed to his son, the appellant, the consideration paid therefor being $2,500. It was then and is now vacant land and used for no purpose except cultivation. It frequently overflows from a shallow depth to as much as 14 feet, and for which reason it could not be used for permanent business purposes, nor was it shown that any such business is being conducted anywhere near it. Perhaps some of plaintiffs' witnesses may have intimated to the contrary, but such a contention is overwhelmingly disproven by other witnesses in the case. Appellant himself did not testify at the trial, but he introduced his father, who not only paid for the land in controversy, and listed and paid the taxes on it, but seems to have been the general supervisor and manager of it since it was purchased. He it was who made out the list that was introduced and verified it as the agent of his son. He placed therein the valuation of all the property sought to be condemned at $1,150, but he testified at the trial that it was worth $50,000; whereupon on cross-examination attorneys for the commonwealth confronted him with the verified assessment he had made, and under the circumstances it is perfectly clear that it was competent and relevant, if for no other

purpose than to contradict the witness and to impeach his testimony. This ground, therefore, is overruled.

■ In disposing of ground 2 we cannot refrain from observing that this case presents the widest divergence of opinions of the witnesses who testified in the case concerning the value of the land sought to be taken than any case that has ever come before our observation. One witness for defendants placed the valuation at $60,000, and his other witnesses fixed it at different descending amounts down to the lowest one at $10,000. Some six or more witnesses who were residents of the city of Burnside, including the mayor, testified that its value was from four or five thousand, with a descending scale down to $1,000, the latter being about $135 per acre; while the verdict appealed from is substantially more than twice that amount. Under the rules of practice prevailing in this court, it would be a useless consumption of time and space to discuss the testimony of each witness, or to undertake to establish the fact that under such conditions there is no ground for the contention that the verdict is either inadequate or was superinduced by passion or prejudice. The jury was composed of citizens of the county in which the defendants lived, and its members are presumed to themselves have some idea of the value of real estate in that locality. The express testimony introduced by the commonwealth at the trial pre-eminently justified the finding of the jury and to sustain the amount of its verdict as a fair estimate of the market value of the land taken, and this ground will be dismissed without further discussion.

■ Grounds 3 and 4, relied on for a reversal, are so interrelated as that we conclude that they should be considered and disposed of together; our conclusion being that they are likewise unsustainable. The resolution passed by the state highway commission declared in unmistakeable terms the necessity for the obtention of the borrow pit land for the purposes indicated. In passing that resolution, the board was well within its express authority as contained in sections 4356s-1 to and including 4356s-3 of the 1930 edition of Carroll's Kentucky Statutes. Moreover, the engineer who surveyed the premises and located the site of the bridge also certified to such necessity, and it was and is an indisputable fact that the earth material necessary to con-

struct the levy for the approach to the contemplated bridge will have to be obtained from somewhere, and common sense would dictate that the most feasible place would be contiguous territory to the contemplated levy. It is not complained, nor was there any evidence to show, that an unnecessary amount of land was sought to be condemned for that purpose, even if it should be held that it was competent for the defendant in such proceedings by the commonwealth, the sovereignty in this case (and not by one to whom the power of eminent domain has been delegated), to urge that objection, in the absence of a clearly established arbitrary effort to acquire and take from the owner a manifestly excessive amount of his land. The argument that the court erred in hearing the testimony bearing upon the necessity of the taking in the absence of the jury and in not introducing it in their presence is not attempted to be fortified by the citation of any authority; nor is it supported by any convincing reasoning, except an intimation that it was the duty of the jury to pass upon the issue of necessity; but which is in direct conflict with the well-settled rule applicable in condemnation proceedings in the absence of a constitutional or statutory requirement to that effect. Such rule is, that the court is the only tribunal to determine the necessity of the appropriation in all cases where it is and becomes an issuable fact. It is so declared in all of the text authorities dealing with the subject, and has been recognized and approved by this court in the cases of Tracy v. Elizabethtown L. & B. R. Co., 80 Ky. 259, 3 Ky. Law Rep. 813; Louisville & N. R. R. Co. v. City of Louisville, 190 Ky. 214, 227 S. W. 160; Royal Elkhorn Coal Company v. Elkhorn Coal Corporation, 194 Ky. 8, 237 S. W. 1083; Baxter v. City of Louisville, 224 Ky. 604, 6 S. W. (2d) 1074, and others cited in those opinions. In view of that firmly settled rule of practice, it becomes unnecessary to further pursue the discussion of this ground, which it is clear is without foundation.

Counsel for defendants also seek to reverse the judgment because, as argued by him, the requisite necessity for the appropriation of the land of his clients was not proven, even before the court who determined it. It was in proof that the approach to the contemplated bridge could be constructed by building a concrete aqueduct instead of a levy made of earth material, and thus

dispense with the necessity of borrow pits. The witnesses who testified upon that subject said that it would cost something like $60,000 additional to adopt the viaduct method of approach, and it is manifest that it would not be as satisfactory and permanent after completion as the levy method. It is therefore argued that the proof referred to establishes only an economy necessity to save expense, and which is not the character of "necessity" required by law to permit appropriation of property by condemnation, and counsel cites in support of that contention the case of Warden v. Madisonville, H. & E. R. R. Co., 128 Ky. 563, 108 S. W. 880, 33 Ky. Law Rep. 38. That case, as well as the text in 20 C. J. 630, sec. 114, and also all other cases and authorities to which our attention has been called, says that: "Necessity within the rule stated * * * does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owners consistent with such benefit, although it does not include the taking of land which may merely render the employment of the improvement more convenient or less expensive." But such declarations are, in the first place, made in cases where private individuals sought to exercise a delegated right of eminent domain, and not in those where the sovereignty itself was seeking the appropriation for an acknowledged public purpose.

Moreover, such language when employed by courts and text-writers has reference to costs and expenses incurred in the completion of the public project in accordance with the architectural plan and method adopted therefor. But such declared rule was never intended to bar the item of "excessive expense" as a factor in the element of necessity, incident to the construction of the work upon an entirely different plan from the one approved by the condemnor; provided, of course, his or its adopted plan is one that is applicable and suitable for the accomplishment of the public purpose.

In this case the building of the contemplated bridge with its necessary approaches is an acknowledged public purpose; the plan of building the approach on a levy, rather than on an elevation made of concrete or other material, is reasonable and appropriate for the accomplishment of the main public purpose, and it does not lie

in the mouth of the condemnee to demand and require the condemnor to change the adopted plan or method of structure so as to dispense with the requirement of taking a portion of his land, any more than he could successfully defend such a proceeding by proving that the highway and the bridge could be constructed at some other point across the stream and at such a distance from his land as to require the taking of none of it; nor any more than he would have the right to contest the "necessity" for opening roads and streets, which the proper public authorities having charge thereof have determined should be done, upon the ground that another location would be more feasible. All text authorities and courts indorse the proposition we have stated and which is approved by this court in the late Baxter case, supra. The text in 20 C. J. 624, sec. 111, in dealing with the subject, says: "In the absence of some constitutional or statutory provision to the contrary, where the use for which property is sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power are political and not judicial questions. The legislative determination is conclusive and not reviewable by the courts. This power is unqualified, other than by the necessity of providing that compensation shall be made, and when the power has been delegated it is a subject of legislative discretion to determine what prudential regulations shall be established to secure a discreet and judicious exercise of the authority. So also the extent to which property shall be taken for public use rests wholly in the legislative discretion, subject to the limitation that due compensation be made. The legislature may determine the amount of land necessary to be taken and the location. It may designate the particular property to be condemned, and its determination in this respect cannot be reviewed by the court." We find nothing in our Constitution nor in any of our statutes militating against the principles so stated in that text and approved in the Baxter opinion, supra, and in other domestic cases therein cited.

It, therefore, not being disputed that the land sought to be apropriated for borrow pits is necessary and requisite for the construction of a levee approach to the contemplated bridge and the authorized public agency (the state highway commission) having adopted

that plan of approach, there exists no right in defendants to defeat the purpose of the condemnation by showing that other engineering devices might have been employed that would not have required the taking of their land, although it be one vastly more expensive, and which was not approved by the proper public agency as the most appropriate and wiser plan. We therefore conclude that this argument is also without merit.

There being no error prejudicial to the substantial rights of appellants, the judgment is affirmed.