## Baxter v. City of Louisville.

(Decided May 8, 1928.)

(Rehearing Denied, with Modification, June 19, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Eminent Domain.—Where the board of public works, pursuant to ordinance, ordered the city attorney to institute proceedings to condemn certain property for wharf purposes, such order was, within Ky. Stats., sec. 2831, an order for the condemnation of such property and words in which order was put were immaterial.

2. Eminent Domain.—In dealing with proceedings of board of public works of cities, under Ky. Stats., sec. 2831, providing for orders relative to condemnation of property for a public purpose, courts do not require technical strictness in board's wording of orders.

3. Eminent Domain.—In proceedings under Ky. Stats., sec. 2831, relative to condemnation of private property for municipal purposes, time of mayor and common council giving consent to proceeding is immaterial as consent may be given in advance as well as after action of board of public works.

4. Eminent Domain.—On appeal from judgment relative to condemnation proceedings by city, under Ky. Stats., sec. 2831, defendant could not complain of board of public work's failure to produce, at the trial, an order for condemnation, where fact of there being an order was stipulated.

5. Eminent Domain.—While the necessity for the taking of property by a municipality, under Ky. Stats., sec. 2831, for public use, is a question of law for the court, some weight is given to the judgment of the municipal authorities, and their judgment will not be disturbed unless it be made to appear that the use was palpably private, or the necessity for the taking was without any reasonable foundation.

6. Eminent Domain.—Though expediency of constructing a public improvement and the extent of public necessity are not judicial questions, yet, if the property taken by eminent domain was ostensibly for a public purpose for which it could never be used, courts should protect owner's constitutional rights.

7. Eminent Domain.—The amount or width of land which may be taken in exercise of eminent domain is, within reasonable limits, within the discretion of the condemning body exercised in good faith, unless amount or width is expressly limited by charter or statutory provision, in which case no amount in excess of the limit can be taken unless charter or statute also provides for taking of such excess under circumstances therein described, or unless the quantity and value thereof are exceedingly small.

8. Eminent Domain.—Condemning corporation may condemn lands sufficient to provide for not only its present but also its prospective necessities, if land condemned is not more than may, in good faith, be presumed necessary for future use within reasonable time.

9. Eminent Domain.—If use for which property is taken under eminent domain is public, it is immaterial whether the power of eminent domain is to be exercised by a private or by a municipal corporation or by the state itself.

10. Eminent Domain.—In a case in which the question whether the use of property to be taken under power of eminent domain is public is close, courts are inclined to be more liberal in interpretation of the taking if the agency is public.

11. Eminent Domain.—Under Ky. Stats., sec. 2831, relative to the condemnation of property for municipal purposes, the only question to be submitted to the jury is the compensation to which the landowner is entitled for the taking of his property.

12. Eminent Domain.—Under Ky. Stats., sec. 2831, the necessity for the taking of land for a public purpose by municipality is a question of law for the court, and evidence on this subject should not be heard before the jury for this would only serve to divert their minds from the single issue of compensation which they are to try.

13. Eminent Domain.—Under Ky. Stats., sec. 2831, relative to the condemnation of property for municipal purposes, question of necessity of taking is a preliminary one that should be settled by court on evidence before it before jury is impaneled, and if court holds that there is no necessity for the taking the jury need not be called to fix value of property.

14. Appeal and Error.—On appeal from judgment in action under Ky. Stats., sec. 2831, relative to the condemnation of property for municipal purposes, reviewing court would not reverse trial court's judgment and remand case for new trial on ground of erroneous refusal to admit certain evidence where evidence, though found to have been erroneously refused, would not have changed result.

15. Eminent Domain.—Evidence given and proffered held not sufficient to show that city. in condemning wharf property for public purposes, under Ky. Stats., sec. 2831, acted without reasonable foundation or property was taken in behalf of public improvement which it could not serve.

16. Eminent Domain.—In action by city under Ky. Stats., sec. 2831, to condemn private property for public purposes, that certain city officers had many times tried to buy the condemned land for park purposes before the time of the condemnation proceedings held not to estop the city to prosecute proceedings to condemn the property for wharf purposes by proper officials and pursuant to statute, where original action of city officers in attempting to purchase was without authority of the common council and was not at its direction.

17. Eminent Domain.—Court's abuse of discretion in permitting municipal authorities in condemnation proceedings, under Ky. Stats., sec. 2831, to condemn land extending a thousand feet back of the top of the river bank, land being taken for wharf purposes, held not shown, as considerable space may be needed for warehouse and other structures where city is large.

18. Eminent Domain.—The reviewing court could not disturb the jury's finding, under Ky. Stats., sec. 2831, relative to condemnation of property by cities for public purposes, where finding of value was not palpably against weight of the evidence.

19. Constitutional Law.—Eminent domain statute (Ky. Stats., sec. 2831), as applied in suit by city to condemn land for wharf purposes, held not to deprive the landowner of his property without due process of law, in violation of Constitution U. S. Amend. 14, sec. 1.

20. Constitutional Law.—Eminent domain statute (Ky. Stats., sec. 2831), as applied in suit by city to condemn land for wharf purposes, held not to deprive the landowner of equal protection of the law in violation of Constitution U. S. Amend. 14, sec. 1.

EMMET R. FIELD and WILLIAM H. FIELD for appellant.

WILLIAM T. BASKETT, ROWAN HARDIN and JOSEPH E. CONKLING for appellee.

Opinion of the Court by Commissioner Hobson—
Affirming.

The city of Louisville began this proceeding against Dr. W. E. Baxter to condemn, for wharf purposes, a tract of land containing 24.247 acres, lying on the Ohio

river below Louisville. The jury fixed the value of the land at $12,123. The court entered judgment pursuant to the verdict. Dr. Baxter appeals.

The proceeding was had under section 2831, Kentucky Statutes, which provides as follows:

"Whenever property shall be needed for appropriate municipal purposes, either within the boundaries of the city or the county, the board of public works, may, with the consent of the mayor, if the amount be under two thousand dollars ($2,-000), order the condemnation of such property; and if the amount be over two thousand dollars ($2,-000) may, with the consent of the mayor and the general council, order the condemnation of such property. The proceedings for the condemnation of property for such purposes shall be instituted and prosecuted in the name of the city, by the city attorney, as provided in this act for the condemnation of property for park purposes."

By section 21 of an ordinance approved March 25, 1927, the city council authorized the board of public works to condemn the property in question and directed the city attorney to institute proceedings for its condemnation, when so ordered by the board of public works, for wharf purposes. The mayor approved the ordinance. The petition contained this averment, after setting out the above ordinance:

"The board of public works under section 2 of said ordinance, has authorized and directed the city attorney to institute proceedings in the proper court to condemn said property for wharf purposes."

By its order for the city attorney to institute proceedings to condemn the property, the board, in substance, did "order the condemnation of such property." This was the necessary effect of the order made by the board, and the words in which the order was put are not material. The court, in dealing with the proceedings of such boards, does not require technical strictness in the wording of their orders. In another part of the petition it is alleged that, by a letter filed therewith, the board directed the city attorney to take necessary action in the matter. But this was only an allegation of notice to the city attorney of the action of the board and in no wise

qualified the previous allegation as to the action taken by the board.

While the power to condemn the property was vested in the board and it could only act in a matter over $2,000 with the consent of the common council and the mayor, the common council and the mayor could give their consent in advance as well as after the action of the board, and the fact that the common council and the mayor first gave their consent, and then the board acted is not material. The demurrer to the petition was therefore properly overruled.

It is also insisted that it was not shown on the trial that the board had ordered the condemnation. When one of the officers of the city was on the stand and had introduced a number of records, this occurred:

"By Mr. Sales: Q. Will you stipulate in the record that the board of public safety directed and procured the city attorney to institute this suit?
"By Mr. Hubbard: A. Yes, sir."

Mr. Sales represented the city on the trial, and Mr. Hubbard represented Dr. Baxter. The fact being stipulated, the defendant cannot complain here that no order of the board of public works was produced on the trial. A direction to the city attorney to institute the suit was, in substance, an order for the condemnation of the property and, this being conceded at the trial, cannot be complained of now.

The statute only authorizes the condemnation of property "needed for appropriate municipal purposes." The defendant by his answer denied that the property was needed for wharf purposes, and aptly pleaded that this was only a subterfuge and pretense for condemning the property. In Reed v. Louisville Bridge Co., 8 Bush, 73, the court after stating that only the land necessary for the public purpose may be condemned, added:

"This necessity must exist as a condition precedent to their legal right to resort to the remedy given them to be enforced by the writ of ad quod damnum. Of the existence of this necessity the company is not to be the judge. It must be ascertained by a competent tribunal, before which the parties whose lands are sought to be taken, as well as the company, can be heard."

Again in Dennis Long & Co. v. City of Louisville, 98 Ky. 87, 32 S. W. 277, 17 Ky. Law Rep. 642, the court after laying down the rule that only so much land could be taken as was reasonably necessary for the public purpose, added:

"This limitation is one that, in the very nature of the thing, must exist, and one that the courts have uniformly upheld, that is the right to take only so much of the property of the citizen as may be necessary to answer the public use for which it is taken. The city had the right to take that much but no more."

In Henderson v. City of Lexington, 132 Ky. 405, 111 S. W. 322, 33 Ky. Law Rep. 703, 22 L. R. A. (N. S.) 20, after upholding the power of the city to take property for public uses, the court added:

"But, when the corporation that is invested with this power undertakes to exercise it, it is for the courts to say whether it is exercised for a public purpose or not. In other words, to determine whether or not the taking of the particular property the corporation desires to condemn is necessary for public use."

To same effect, see Warden v. Madisonville, etc., R. R. Co., 128 Ky. 563, 108 S. W. 880, 33 Ky. Law Rep. 38; Greasy Creek Mineral Co. v. Ely Jellico Coal Co., 132 Ky. 697, 116 S. W. 1189.

While the necessity for the taking of the property for the public use is a question of law for the court, some weight is given to the judgment of the municipal authorities, and their judgment will not be disturbed "unless it be made to appear that the use was palpably private, or the necessity for the taking was without any reasonable foundation." L. & N. R. Co. v. City of Louisville, 131 Ky. 108, 114 S. W. 743, 24 L. R. A. (N. S.) 1213; L. & N. R. Co. v. City of Louisville, 190 Ky. 214, 227 S. W. 160.

The conclusions sustained by the great weight of authority are as follows:

"The expediency of constructing a particular public improvement and the extent of the public necessity therefor are clearly not judicial questions; but it is obvious that if property is taken in the os-

tensible behalf of a public improvement which it can never by any possibility serve, it is being taken for a use that is not public, and the owner's constitutional rights call for protection by the courts." 10 R. C. L. 184, sec. 159.

"The amount or width of land which may be taken is, within reasonable limits, within the discretion of the condemning corporation or body, to be exercised in good faith, unless the amount or width is expressly limited by charter or statutory provisions, in which case no amount in excess of the limit can be taken, unless the statute also provides for the taking of such excess under circumstances therein prescribed, or unless the quantity and value thereof are exceedingly small." 20 C. J. 634, sec. 116.

"A condemning corporation may condemn lands sufficient to provide for not only its present but also its prospective necessities, as in the case of a railroad corporation, if it is not more than may in good faith be presumed necessary for future use within a reasonable time." 20 C. J. 637, sec. 117.

"If the use for which property is taken is public, it is immaterial whether the power of eminent domain is to be exercised by a private or by a municipal corporation, or even by the state itself; but in a case in which the question whether the use is public is close, the courts are inclined to be more liberal if the agency is public." 10 R. C. L. 34, sec. 30.

To same effect, see 20 C. J. 636, note 31.

Under the statute, the only question to be submitted to the jury is the compensation to which the owner of the land is entitled for the taking of his property. The necessity for the taking is a question of law for the court and the evidence on this subject should not be heard before the jury, for this would only serve to divert their mind from the single issue they are to try. The question of the necessity of the taking is a preliminary one that should be settled by the court on the evidence heard before it, before the jury is impaneled, and if the court holds that there is no necessity for the taking the jury need not be called to fix the value of the property.

In this case, however, both sides introduced all their evidence on the jury trial, and one question earnestly insisted upon is that the court erred in rejecting certain evidence, offered by the defendant tending to show the

want of necessity for the taking. But if this evidence had been admitted, the question should not have been submitted to the jury and should have been decided by the court, so on appeal, the case comes to this: If the evidence for the defendant had all been admitted, should the court have adjudged that there was no necessity for the taking? The question may be decided by this court on appeal, for it would be idle to reverse the case for another trial and send it back to the circuit court for this error, if the evidence, which was refused, would not have changed the result.

The proof for the city showed these facts: The city owns the major part of its wharf property and has for a number of years followed the policy of acquiring the river front for this purpose. This has proved a very great advantage to the city. The city had in 1920 a population of 234,891; in 1925 the population had grown to 305,805, and at the trial was estimated at 347,000. The United States has adopted the plan of locking and damming the Ohio river. This plan when completed will give Louisville a 9-foot stage of water the year around. An electric plant has been established there which will furnish power at very cheap rates. Frieght rates play a very large part in industrial life. With the cheaper water rates and the cheaper power rates the city anticipates a faster growth as soon as the locks and dams are completed, and this will probably be in about two years. The council passed the ordinance upon the idea that if the city owned this land it would utilize it by leasing it to manufacturers for wharf purposes and thus induce them to locate their plants in Louisville, and that in the meantime it could use it for other purposes. The witnesses for the city thought that the plans above indicated would work out in the next five years, and that it was to the interest of the city to acquire the property now; for its public ownership might be the means of bringing to the city manufacturing plants which would not come, unless this river front was public property. The property in question fronts on the river about 1,600 feet and runs back from the top of the bank about a thousand feet.

The defendant proved that a sand bar on the Kentucky side took up two-thirds of the river at this point. The channel is next to the Indiana shore and some 600 yards from the Kentucky shore. No steamboat had ever landed on the Kentucky shore. The government has erected a dike to drive the water to the Indiana side. The

sand bar, at ordinary stages of the water, is above the water level. The defendant then proposed to prove by each of several witnesses, in substance:

"He is familiar with the bar at this point and has been all of his life; that he went swimming in the river at this point when he was a boy, and that he is familiar with it and with its structure; that he is a steamboat and river man and has been for many years, and that it is a physical impossibility to use this property for wharf purposes without the expenditure of great sums of money; that it would require from three to five millions of dollars to make a wharf at this point, and that it would require something like a million dollars a year to keep it cleaned out. He says that dam 43, three miles below West Point, has been completed, and that, when the pool is full, it only throws water over this bar to a depth of one foot, which is insufficient for wharf purposes; and from the channel of the river to the shore line of the Ohio river it is at least three hundred yards or approximately one thousand feet. He says that it would be wholly impractical to use it as a wharf; that to use it as a wharf it would be necessary for the government to change the channel of the river at this point, and that it could not do so without the removal of the present dikes and building new dikes and building a wall on the opposite side of the channel at this point just opposite the property so as to throw the channel over on the Kentucky side instead of the Indiana side, and this would involve the expenditure of millions of dollars, and would require the expenditure of vast sums of money to maintain it as a wharf; that the property is not adaptable for wharf purposes, even if it was constructed, because it is too far from the city of Louisville for commercial purposes, for trucking to and from the city, besides being expensive and prohibitive in cost, and it is wholly impractical to even conceive of a wharf at this point,"

These witnesses were steamboat men, and not civil engineers or qualified to speak as experts on matters of construction. They testified on the basis of the conditions now existing. But when the pool from the dam below Louisville is full and the water is thrown back to the falls at Louisville a very different situation will be

presented.   The dike now maintained by the government to throw the water to the Indiana shore will no longer be necessary, and the construction of a channel deep enough for steamboats to come to the Kentucky shore, at this point, may be a very simple matter.   In fact, when the dike is removed that now turns the water, the river may wash out the channel.   Though not needed now, the property may in five years be necessary.   This evidence is not sufficient therefore to show that the city, in condemning the property, acted "without any reasonable foundation or that the property is taken in the ostensible behalf of a public improvement, which it cannot by any possibility serve."   Giving the action of the city authorities their due weight, the court cannot hold that there was a palpable abuse of discretion here under the evidence.

The defendant also offered to show by several witnesses that the city owned a tract of land just above his land and also owned a tract just below his, and that some of the city officers time and again tried to buy his land for park purposes.   But the action of certain city officers, without authority of the common council or at its direction, does not estop the city when action is taken in the regular way by the proper officials.

It is earnestly maintained that an excessive amount was condemned where a thousand feet was taken back of the top of the river bank.   But in a large city a considerable space may be needed for warehouses and other structures if, as anticipated here, this ground may be needed in the business of manufacturing plants shipping their products.   The court is unable to say that there was such an abuse of discretion here as invalidated the proceedings.

It is earnestly insisted that the amount allowed for the property is palpably too small and that the verdict is flagrantly against the evidence.   But this was a question of the credibility of the witnesses.   The verdict of the jury is as high as many of the witnesses placed the value of the property, and, while others placed it much higher, the court, under the well-settled rule, cannot disturb the verdict where it is not palpably against the evidence.

On the whole case, the court finds no substantial error in the record warranting a reversal.

Section 2831, Kentucky Statutes, as applied by the court here, does not deprive appellant, Baxter, of his property without due process of law, or deny him the

equal protection of the laws, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, or deny him any right he is entitled to under the Constitution of the United States.

Judgment affirmed.

Whole court sitting.