## Perry County Board Of Education et al. v. Deaton et al.

October 18, 1949.

Craft & Stanfill and D. G. Boleyn for appellant.

William Melton for appellee.

CHIEF JUSTICE SIMS—Reversing.

The County Board of Education of Perry County voted to change the location of a one-room school building from the mouth of Cams Branch to a point in the same district about three-fourths of a mile distant from the present building. Three residents of the district, known as the Johnson School District, instituted this action to enjoin the Board from so doing. This appeal is prosecuted by the Board from the judgment of the chancellor restraining it from changing the location of the schoolhouse.

The petition averred the Board was arbitrarily changing the location of the school building for the convenience of Mrs. Yancy Amis, who teaches in this Johnson School and who is the wife of a member of the Board. The answer is a traverse followed by the affirmative plea that the Board has a wide discretion in the location of school buildings and deems it to be, and it is, necessary to locate the new building at the point selected by the Board, which is approximately at the geographical center of the school district and is more convenient and accessible to the greater number of the pupils in the district.

Upon the issue thus formed considerable proof was taken and the chancellor in adjoining the Board from changing the location of the schoolhouse found that high water enters the building where it is presently located and that while he realized the Board "has a very wide discretion in the matter, * * * the Court feels that it would be best for the Board to make an arrangement for a site near the present site where the house can be located so that it will be above high water. * * *"

We will not consume the time and space necessary to detail the evidence of the various witnesses. It will suffice to say that the testimony introduced on each side was, as a rule, controlled by the personal interest of the witnesses. This is not an unusual human frailty. Generally, those witnesses living near the present location

of the schoohouse testified it was to the best interest of the children in the district to let the building remain where it is; and those witnesses living near the site at which the Board had voted to locate the new building testified it was to the best interest of the pupils to erect the building there.

Practically all witnesses on both sides were in agreement that a time or two each year high water floods the present building. Some witnesses thought the schoolhouse could be located further up the hill at the present site and thereby escape being flooded when the river rises. Others expressed the opinion that there was not room on the hill to erect a building so it would escape floods. There was testimony that the point selected by the Board for the new building was subject to being flooded. Some witnesses did not think high water would reach the point where the building is to be located except in case of an extreme flood.

The testimony for appellee shows there are from 14 to 16 children living below the mouth of Cams Branch who attend this school. The Attendance Officer testified there are 54 pupils in the school. The County Superintendent's testimony is to the effect that it would be more convenient for the children living below the mouth of Cams Branch to attend school at its present location, while it would be more convenient for the children living above the mouth of the Branch to attend the school when moved to the proposed new site. One member of the Board testified that the new site is as near the geographical center of the district as the Board can get it. The State Board of Education approved the location of the building at the new site.

There is testimony that a new road will be constructed within the next year from Cams Branch to the Breathitt County line, a distance of a few miles, over which a school bus can be operated and the pupils attending school at the present site can then be transported to the Buckhorn School. All admit the Buckhorn School is a superior one. However, it is evident the Board took into consideration in locating the new building that all the children in the district cannot attend the Buckhorn School.

County Boards of Education are given broad dis-

cretion under KRS 160.160 and 160.290 in the selection of school sites and in the establishment of schools as they deem necessary for the promotion of education and the general welfare of the pupils. As stated in Phelps v. Witt, 304 Ky. 473, 201 S. W. 2d 4, and Justice v. Clemons, 308 Ky. 820, 215 S. W. 2d 992, when the Board has obtained the approval of the Superintendent of Public Instruction of its plans for a new building (KRS 162.-060) courts will not interfere with the proposed plans unless there is positive proof of fraud, collusion or a clear abuse of discretion. The obligation of locating school sites rests with the County Board of Education. It is not for the courts to say whether the Board has acted wisely or unwisely in determining where the school should be located. The only question for the courts' determination is whether the Board is exceeding its authority or is acting arbitrarily.

When the chancellor said in his judgment enjoining the Board from locating the schoolhouse at the site chosen by the Board, "The Court feels that it would be best for the Board to make an arrangement for a site near the present site where the house can be located so that it will be above high water, * * *" it is manifest he undertook to substitute his discretion for that of the Board. Under the authorities to which reference is made in the preceding paragraph, this he cannot do. There is no proof of fraud, collusion or abuse of discretion on the part of the Board and in the absence of clear proof thereof, the chancellor was without authority to enjoin the Board.

The judgment is reversed with directions that one be entered in conformity with this opinion.