**PIKE COUNTY BOARD OF EDUCATION et al., Appellants,**

**v.**

**Elzie FORD et al., Appellees.**

Court of Appeals of Kentucky.

May 13, 1955.

Burke & Burke, Francis M. Burke, F. Dale Burke, Pikeville, for appellants.

W. A. Daugherty, Henry D. Stratton, Pikeville, for appellees.

CAMMACK, Judge.

This condemnation proceeding originated in the Pike County Court in April, 1954. The Pike County Board of Education sought to condemn the appellees' land in dispute for a site for a 12 grade school. The commissioners, appointed by the court, inspected the land and recommended that the owners be paid $12,000. A county court jury found that the value of the land was $12,000, and that the appellees' adjacent property would be damaged in the amount of $1,000. An appeal to the Pike Circuit Court was prosecuted by the appellees from a judgment entered on that verdict. In the circuit court the jury found the value of the land taken to be $15,350, and made no award for damage to the remainder of the tract. In October, 1954, after making findings of fact and conclusions of law, the court entered a judgment which set the verdict aside and dismissed the Board's petition.

This appeal is from that judgment. The appellant contends that the court erred in setting aside the verdict and in dismissing its petition. The appellees argue that the dismissal was proper because (1) a resolution authorizing the condemnation had not been passed by the Board; (2) the Board had not made a bona fide offer to purchase the land; (3) the commissioners appointed by the county court were not qualified to serve in this case; and (4) the State Superintendent of Public Instruction had not approved the school site.

In the findings of fact the court stated:

"(a) The plaintiff, by proper resolution, authorized and directed that condemnation proceedings be instituted to condemn and take the land described in the pleadings and evidence for the purpose of erecting a public school thereon.

"(b) This tract of land has a total area of 11.2 acres.

"(c) The value of the land taken is $15,350.

"(d) A portion of the tract of land condemned, containing 1.03 acres, is under lease to the Columbian Fuel Corporation for use by it in pumping or propelling natural gas through its distribution system. This 1.03 acres is now being used for the purposes stated in the lease. This portion of the land lies on the extreme upper end of the tract condemned.

"(e) By the terms of this lease, the lessee may maintain a pumping station on the land covered by the lease for an indefinite period of time upon the payment of an annual rental of $200. This lease may also be terminated by the lessee at the end of any lease *year* but the landlord does not have a corollary right.

"(f) The tract sought to be taken is also subject to various other easements such as power lines, telephone lines and gas transmission lines. The Court finds that the present use of the land for electric power lines and telephone lines is not to any degree incompatible

with the purpose for which the Board seeks to condemn.

"The map submitted by the plaintiff and filed in evidence shows the land to be traversed by an 18 inch or a 16 inch gas transmission line and the instrument authorizing the installation of this line is not made a part of the record nor is there evidence concerning the gas pressure and other details regarding the use of the line.

"In the interest of safety and because as a matter of common knowledge high pressure gas lines are known sometimes to leak and blow out and cause damage, the court finds that the owner of the easement or other right for this gas line should be made a party and evidence introduced to determine whether it constitutes such a hazard as to be incompatible with a use for school purposes.

"(g) In all other respects the tract condemned meets the requirements for the location of the proposed public school."

From these facts the court concluded as a matter of law that:

"(a) The Columbian Fuel Corporation, lessee of a portion of the tract sought to be condemned, is a necessary party to this action as are the various owners of other easements in this land.

"(b) By reason of the nature of the use of that portion of the land leased to the Columbian Fuel Corporation, it cannot be put to any public use by the plaintiff and no authority to condemn the interest of the defendants in said land exists.

"(c) The entire tract of 11.2 acres, which includes the land leased to the Columbian Fuel Corporation *have* been taken as a whole, the Court is without power to separate or divide the tract into that which may be taken under the plaintiff's right of condemnation and that which may not be taken and used for public school purposes."

We are of the opinion that the trial court exceeded its authority and usurped the functions of the School Board in setting the verdict aside. Two reasons were given for the ruling. The first was based upon a map introduced by the appellant which shows that a 16 or 18 inch gas transmission line traverses the property. The court took judicial notice of the dangerous nature of the line and stated that the owner of the easement was a necessary party to the action as were the owners of the other easements; and that evidence should be heard to determine whether the pipe line constitutes a hazard so as to be incompatible with the use of the property for school purposes. The second reason was that, since a portion of the land is now subject to a lease to the Columbian Fuel Corporation, the Board could not condemn the appellees' interest in the property.

The record shows that no question was raised as to the dangerous character of the pipe line until after the circuit court jury had reached a verdict on the value of the land. At that time the appellees filed a motion to permit the introduction of evidence relating to the hazards incident to the gas pumping station and transmission line, and the cost of removing the line. The court made its determination without hearing such evidence on the questions.

■ A school board is vested with the authority to select public school sites, subject only to the limitation that it cannot act arbitrarily or beyond the pale of sound discretion. Goins v. Jones, Ky., 258 S.W.2d 723; Phelps v. Witt, 304 Ky. 473, 201 S.W.2d 4. In the case of Perry County Board of Education v. Deaton, 311 Ky. 227, 223 S.W.2d 882, 883, we said:

"County Boards of Education are given broad discretion under KRS 160.160 and 160.290 in the selection of school sites and in the establishment of schools as they deem necessary for the promotion of education and the general welfare of the pupils. As stated in Phelps v. Witt, 304 Ky. 473, 201 S.W.2d 4, and Justice v. Clemons, 308 Ky. 820, 215 S.W.2d 992, when the Board

has obtained the approval of the Superintendent of Public Instruction of its plans for a new building (KRS 162.060) courts will not interfere with the proposed plans unless there is positive proof of fraud, collusion or a clear abuse of discretion. The obligation of locating school sites rests with the County Board of Education. It is not for the courts to say whether the Board has acted wisely or unwisely in determining where the school should be located. The only question for the courts' determination is whether the Board is exceeding its authority or is acting arbitrarily."

■ The testimony of Paul W. Thurman, Director of School Building Grounds for the State Department of Education, shows that the superintendent of Public Instruction was consulted about the proposed site and that the location was approved by the Department. There is no evidence showing fraud, collusion or abuse of discretion on the part of the School Board. Consequently, the court exceeded its authority when, on its own motion, it undertook to question the wisdom of choosing this particular site for the school. Therefore, the owner of the gas transmission line was not a necessary party. Since the other easements are not incompatible with the use of the land for school purposes, their owners were not necessary parties.

■ We think also that the court erred in holding that the Board was without authority to condemn the land under lease to the Columbian Fuel Corporation. An authority with the power to condemn is not limited to its immediate needs only, but it may, and indeed should, give consideration to future needs. Baxter v. City of Louisville, 224 Ky. 604, 6 S.W.2d 1074. In 18 Am.Jur., Eminent Domain, section 111, it is stated:

"In the determination of whether the taking of property is necessary for public use, not only present demands of the public, but those which may be fairly anticipated in the future,

may be considered. * * * When a taking of land or water rights or other property is made for a public use, there is no valid objection if a reasonable regard for probable future expansion is kept in mind, and a taking of considerably greater extent than is required by present necessities is made, even if the parties making the taking derive a revenue from selling the surplus water or leaving the surplus land for private purposes until it is needed for the public use. * * *"

The fact that a portion of the land taken will continue to be put to private use by a public utility, holding a lease thereon until the needs of the Board require its use, does not destroy the right of eminent domain. The Board had authority to take whatever interest the appellees had in the property and to leave for future negotiation the question of the corporation's interest. See 18 Am.Jur., Eminent Domain, section 41.

Although a consideration of the questions raised by the appellees is not necessary, since we find that the lower court erred in dismissing the Board's petition, and there being no cross-appeal, we will discuss them briefly in an attempt to clarify the case. We have already dealt with the question of the approval by the Superintendent of Public Instruction of the proposed school site, so it is not necessary to discuss it further.

■■ The appellees urge that no resolution was adopted by the Board, authorizing a taking of the land. This Court, in dealing with proceedings of governing bodies on such questions, does not require technical strictness in their language. The resolutions involved in this case read as follows:

"Be It Resolved, that the firm of Burke and Burke, Attorneys at Law, Pikeville, Kentucky, comprising Francis M. Burke and F. Dale Burke, be employed by the Board for the purpose of instituting and prosecuting action against Elzie Ford, Guenn Ford and Mary Ford for the condemnation of

approximately 11 acres of land lying on Johns Creek near its junction with Raccoon Creek between U. S. Highway No. 119 and the center of Johns Creek in this County, and

"Be It Further Resolved, that the said firm of Burke and Burke be authorized and directed to prepare any and all papers, and to take any and all steps necessary and proper for said purpose."

While these resolutions do not specifically direct that the condemnation proceedings be instituted, we think that was their necessary effect. See Baxter v. City of Louisville, 224 Ky. 604, 6 S.W.2d 1074.

The appellees argue also that the Board did not make a bona fide effort to purchase the property. We have indicated that a " 'take it or leave it' " offer is not a good faith offer. Paducah Ice Mfg. Co. v. City of Paducah, 289 Ky. 31, 157 S.W.2d 490, 491. It is true that the Board's offer of $5,000 was decidedly inadequate, but the matter was left open for further negotiation. The letter wherein the offer was made contained this statement:

"If Mrs. Ford and her son feel that they can make some offer with some degree of reasonableness attached thereto, we shall be happy to receive and consider their offer."

That was not a "take it or leave it" offer, but a request for a reasonable offer in return. We are unable to conclude, as a matter of law, that there was no good faith effort to negotiate.

Finally, the appellees contend vigorously that the commissioners appointed by the county court were not qualified to serve. KRS 416.020 provides that upon the filing of a condemnation petition as provided in KRS 416.010, " * * * the court shall appoint as commissioners three impartial housekeepers of the county who are owners of land. * * * " A stipulation filed by the parties shows that of the three commissioners, one was a brother-in-law of a clerk in the county superintendent's office;

another was the father-in-law of one of the attorneys representing the Board of Education; and the son of the assistant superintendent of schools married the daughter of the other commissioner. While the better practice would be not to use persons who have such a marital relationship to officials in the county school system, there is no showing that the commissioners were so biased and prejudiced as to cause them to place an unfair value on the land. We are not prepared to say that they were not "impartial housekeepers" by reason of the relationship discussed above.

Although we are reversing the judgment and have engaged in a discussion of all the issues raised, this opinion should not be construed as preventing an appeal by the appellees on the question of the adequacy of the award.

The judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.