James F. BROWNING et al., Appellants,

v.

BOARD OF EDUCATION OF FAIRVIEW INDEPENDENT SCHOOL DISTRICT OF BOYD COUNTY, Ky., et al., Appellees.

Court of Appeals of Kentucky.

May 25, 1956.

Thomas Burchett, Burchett & Burchett, Ashland, for appellant.

Creech & Cox, Ashland, for appellee.

MOREMEN, Judge.

Appellants, who are residents of Millseat precinct, a part of the Fairview Independent School District of Boyd County, filed an action in behalf of themselves and of residents similarly situated by which they sought to enjoin appellees, the Board of Education of that district and its individual members, from erecting a school building on property known to the record as "the Barber property."

After issue had been joined and upon motion for a summary judgment—the court being of the opinion that the pleadings and depositions filed, together with exhibits and affidavits submitted in support of and in opposition to the motion, showed that there was no genuine issue as to any material fact, and that appellees were entitled to judgment as a matter of law—the request for an injunction was denied and the complaint was dismissed.

At an election held on June 10, 1955, the residents of Fairview Independent School District voted to increase the school tax for the purpose of erecting school buildings. One building was to be located in the Millseat section. Three locations were given consideration: (1) the Morgan property; (2) the Stemmer property; and (3) the Barber property. The Morgan property was soon rejected because it was unsuitable. This controversy arose from a difference of opinion between the group represented by appellants and the school board.

In Justice v. Clemons, 308 Ky. 820, 215 S.W.2d 992, we pointed out that a school board has broad powers in selecting school sites and that the selection of a school site is particularly a matter for the exercise of its unfettered good faith judgment. It was pointed out in that opinion and in Phelps v. Witt, 304 Ky. 473, 201 S.W.2d 4, that the board should seek the advice of the State Superintendent of Public Instruction and when his approval has been obtained, the courts should not interfere with the board's proposal unless there is positive proof of fraud, collusion or a clear abuse of discretion. The court reminded itself that it could not transform itself into an investigating committee in order to determine what, in the final analysis, is the best plan for a county school system.

It seems to us that in the case at bar the school board was exceptionally careful in exercising its discretion because it sought the advice of many experts before the final decision was made. The board's initial step was to consult the Superintendent and to make contact with the State Department of Education in order to receive its advice.

The board hired the firm of Hayes & Payne, architects and engineers, to design the proposed building and to supervise its construction. It retained the services of William O. Smith, civil engineer, to survey the respective sites and to make topographical drawings.

A representative of the State Department of Education, Gordie Young, visited the school district and viewed the proposed sites. His deposition was taken for consideration on the motion for summery judgment. In it he stated that he had been connected with the State Department for about 27 years and his various duties included that of approval or rejection of plans and specifications for construction of public school buildings. He made it plain, after viewing the sites in question and after studying the maps which had been furnished to him, that he thought the Barber property was the best one to meet the needs of the community. It is true that at the time the deposition was taken, he seemed somewhat confused as to the total acreage in the various sites but we think the import of his testimony is that he fully understood not only the needs of the community but also the physical characteristics of the properties involved. He pointed out that ideal property is not always available in a community.

William O. Smith, the engineer, recommended the Barber property. R. G. Smith, Director, Division of Buildings and Grounds, State Department of Education,

saw the property, met with the board and later wrote a letter in which he expressed his conviction that the Barber site was better than the Stemmer site because: (1) it could be obtained for about half the amount required to purchase the Stemmer property; (2) the Barber property offered a better site for a school building and the necessary adjacent space; (3) the drainage of sewage across the Stemmer property made it undesirable and actually unsafe; (4) the distance between the two sites was so small that it would make little difference to the children who would attend the school; and (5) the Stemmer property contained a twenty inch high-pressure gas line with an accompanying threat of catastrophe too horrible to contemplate.

The main objections listed by the opponents of the site selected are these: (1) that if the building is placed on the Barber property, pupils attending the school will be forced to travel over a dangerous, crooked and narrow road not flanked with sidewalks; (2) that if the school is located on the Stemmer property, children will have a shorter distance to travel and will avoid the use of the allegedly dangerous road for an additional distance of two or three tenths of a mile; (3) that the Stemmer property will furnish more usable ground than the Barber property; (4) that the action of the board was arbitrary and in abuse of sound discretion.

All the above items which are specific in nature are devoted to the support of appellants' opinion that the Stemmer property is better suited for building purposes. However, the affidavits, depositions and exhibits filed demonstrate conclusively to us that the school board had ample basis and advice upon which they based their opinion as to the Barber property and made their selection. We said in Goins v. Jones, Ky., 258 S.W.2d 723, 724:

"Whenever a new school building is to be erected to serve a particular school pupil area, certain advantages always accrue to one or more groups or patrons and disadvantages to other groups. However, the solution of that problem is the responsibility of the School Boards elected to determine upon the best plans for the county school systems in their particular counties. We cannot substitute our judgment for theirs."

Appellants argue vigorously that this case should not have been decided upon motion for summary judgment and insist that the court should have permitted the case to go to trial so that all witnesses could be produced and testimony taken. However, as we have indicated, from the résumé of evidence given in this opinion it seems to us that the school board acted with such caution and upon such specialized advice that even if appellants could produce many witnesses who disagreed with the school board and the expert opinion given them, still we would have no choice other than to accept the school board's finding because in the absence of a showing of arbitrary or collusive action the board's decision is final.

The judgment is therefore affirmed.