**Roy O. STULL et al., Appellants,**

v.

**WEBSTER COUNTY BOARD OF EDU-CATION et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 7, 1960.

Damon A. Vaughn, Dixon, for appellants.

Withers, Lisman & Withers, Dixon, for appellees.

STANLEY, Commissioner.

This action was instituted by about 450 "citizens, taxpayers and patrons" as a class action against the Webster County Board of Education and its several members to enjoin the consolidation of high schools of the county and the incurrence of debt for the cost of erecting a central building. The defendants raised issues necessary for the adjudication and entered a counterclaim for a declaration of rights in respect to the proposed proceedings, praying the court's approval of their actions. The judgment denied the relief sought by the plaintiffs and approved the proposed consolidation and erection of the building.

One of the grounds of attack upon the action of the Board was that the Board was illegal because it had not been organized or formed as provided by the statutes, and that its members were not holding office in accordance with the law. It appeared that after the Sebree Independent School was merged into the county system in April, 1956, the county board entered an order April 19, 1956, establishing five divisions of the educational district. The boundary lines coincided with the county's five magisterial districts. The procedure laid down in KRS 160.210 was observed, but provisions for equality were not. The trial court held under authority of Marshall v. Whitt,

287 Ky. 290, 152 S.W.2d 945, and second appeal Mason v. Montgomery County Bd. of Education, 291 Ky. 654, 165 S.W.2d 346, that the Board's action was not void and could not be collaterally attacked. We agree. But an interlocutory summary judgment, entered November 27, 1959, sustained the contentions of the plaintiffs regarding improper division of the county educational district. This judgment will be hereafter considered in deciding the cross-appeal by the defendants.

The plaintiffs have charged that the action of the Board of Education, in the premises, does not afford equal educational opportunities, consequently it must be regarded as arbitrary and an abuse of administrative discretion. They maintain that the plan has not received the approval of the State Department of Education or the Superintendent of Public Instruction.

A survey had been made in 1952 of the Webster County school system by the State Department of Education. The study was renewed in the fall of 1955. The Board appointed a committee of fifty citizens, proportionate to the pupil enrollment of the five divisions, to advise it and to make recommendations for improving the schools. The committee held several open meetings throughout the county, which a number of patrons attended. The group submitted a report containing several alternate suggestions or plans. Finally, in January, 1956, forty members of the committee voted to recommend that the county high schools be consolidated and a central building erected. Nine members favored two high schools and one did not vote. It appears that the County Parent-Teacher Association also voted overwhelmingly for this proposal. The Board, by a three to two vote, adopted the plan, pending a survey by the State Department of Education. In April, 1956, the Sebree Independent School District was merged with the county system. The County Board was then conducting four high schools.

The Board requested the State Department to make a survey and recommendation. Three representatives of the Department, each of whom was the head of a division, made the survey in June, 1956. They submitted an exhaustive analysis of the entire school system, and reported that it was "their unanimous conclusion that the children and youth of Webster County can be provided with better educational opportunities and served in a more economical manner by providing one high school organization for grades nine to twelve, housed in a central location." The survey staff reported that the plan proposed "meets this recommendation" and recommended its approval. It appears some steps were taken by the County Board to put the plan into effect. However, after the merger of the Sebree District, the Board had six members (see KRS 160.040), and they became deadlocked on further proceedings, and no action was taken until the Board became a five member body. In February, 1959, again by a vote of three to two, the Board determined to consolidate its high schools and to erect a building capable of caring for an enrollment of 500 to 600 pupils. After receiving the approval of agents of the State Dept. of Education, the County Board contracted to buy a site of 40 acres at the intersection of two main highways near Dixon, the county seat, which is located in the approximate center of the county. The site was approved by the State Department.

There is much evidence in the record showing that the County Board, over a period of four years, gave a great deal of study and deliberation before it finally acted upon the proposition. There is ample evidence to sustain the action of the Board. Its recitation would serve no useful purpose.

One of the principal attacks made upon the Board's action is in relation to the distances which some of the students would have to travel. This too had been given mature consideration by the Board. The

circuit court recognized some inconveniences, but regarded the conclusion not to be unreasonable or arbitrary on this account. We agree.

We cannot concur in appellants' argument that the project has not received the approval of the State Department of Education. While an administrator in the Department, Dr. Robert S. Martin participated in one of the surveys of the Webster County schools. After he had become Superintendent of Public Instruction, Dr. Martin stated in a letter, written to the county superintendent on March 2, 1959, that the Department had reviewed the facts relating to the erection of a central high school near Dixon and other matters. He stated his experience had been that consolidation "can take place only when a large majority of the people are ready to take this important step." He suggested that the County Board "should proceed cautiously with this phase of this proposal." The appellants seize upon this admonition as showing the absence of approval by the State Board of Education. We cannot so construe the letter. Whatever implication there may be to that effect was overcome by Dr. Martin's testimony in this case. He testified that a survey report, such as made in this case, set the policy of the Department and that it is adhered to in the absence of information that it is out of date. Referring to the recommendation of August 1, 1956, that there be a consolidation of the high schools, he testified: "We have not changed our recommendation from that time." The County Superintendent testified there had been no material change in the situation, and Dr. Martin had orally advised the County Board should proceed without delay.

It is true that the Department had not finally approved the actual building plans. They had not been submitted to the Department when the suit was filed. It is testified that the general plan of the building had been approved upon the assumption that there will be a compliance with requirements of the approved educational program and of the ability of the county district to finance it. It was explained that "each step is approved as it comes before the Board, or disapproved."

The Board had consulted and retained an outstanding financial institution concerning the issuance of revenue bonds for the building of the school and employed architects. It has obtained the consent of the Webster County Fiscal Court to act as the holding agency under KRS 162.120 et seq. The administrative head of the Bureau of Finance in the State Department of Education has regarded the tentative plan to be feasible.

It may be said concerning the arrangements for financing the erection of the new building that we agree with the trial court that it appears the contemplated plan is within the financial ability of the Board. Obviously, this case does not present questions concerning the details of the scheme of financing.

■ The trial court well stated in his opinion: "Whether the Board acted wisely or unwisely in the opinion of the Court, is not a matter for judicial determination. The only question the Court can determine is whether the Board exceeded its authority or acted arbitrarily. Justice v. Clemons, 308 Ky. 820, 215 S.W.2d 992. After harmonizing all the evidence, this Court is unable to conclude that the Board's action was without serious consideration and lacking a reasonable discretion and was arbitrary, and is therefore without power or authority to interfere with the action of the Board."

The conclusion of the trial court is not only in accord with the reasoning and decision of Justice v. Clemons, supra, which related to the erection of a central high school in Warren County, but is in accord with other cases in which the courts have declined to interfere with the discretion exercised by the Board of Education in respect to merging schools and choosing build-

ing sites. Perry County Board of Education v. Deaton, 311 Ky. 227, 223 S.W.2d 882; Goins v. Jones, Ky., 258 S.W.2d 723; Clemons v. Bottom, Ky., 262 S.W.2d 85. The case of Wooley v. Spalding, Ky., 293 S.W.2d 563, in which the County Board of Education of Marion County was held to have abused its discretion is an extreme one. The facts are in no way comparable to the facts of the present case.

We come to the cross-appeal.

As stated above, one of the grounds upon which the plaintiffs below (now appellants) attacked the action of the Board of Education consolidating the high schools was that its members had been elected from divisions or subdistricts which were unequal and unlawful. And, as stated, the trial court held that notwithstanding that fact, the action of the Board in respect to the matter could not be regarded as invalid.

The plaintiffs had prayed a mandatory injunction ordering the defendants, the members of the County Board of Education, to change the boundaries of the subdivisions to accord with the statute. During the course of the trial it was revealed by stipulation that the existing subdivisions were unreasonably unequal. By a summary judgment the defendants were ordered to correct the condition. Thereupon, the Board filed a plan of division which the court found unsatisfactory and directed the Board to submit another plan. The second plan was likewise unacceptable. The court overruled the plaintiffs' motion for a rule of contempt against the members of the Board and proceeded to redivide the county district. The cross-appeal is from that order.

The appellants contend that there was no timely appeal from that judgment, and that it is too late to question it now. The order was an interlocutory judgment determining one of the issues in the case. The court did not recite that the determination was a final judgment, hence, an appeal could not then have been prosecuted. CR

54.02. That judgment, however, was incorporated in the final judgment.

Prior to 1940 members of county boards of education were elected from the districts at large. In 1940 the Legislature amended the statutes and provided that members of the county board should be elected from divisions, and that not later than July 1, 1940, the respective boards should divide the educational district "into five divisions as nearly equal in population and containing integral voting precincts in so far as practicable." The act became KRS 160.-210. It appears that the Webster County Board of Education then made such division. By an act of 1956 the statute was amended and subsection 3 of KRS 160.210 was made to read:

"No change shall be made in the boundary lines of the present divisions of the county school district until January 1, 1959, except in case of merger of districts or change in territory due to annexation. Any changes made in division boundary lines shall be such as will make divisions as nearly equal in population and containing integral voting precincts in so far as is practical. No change may be made in division boundary lines more frequently than five years after the last change in any division line, except in case of merger of districts or change in territory due to annexation."

Other parts of the subsection are not pertinent. After the merger of the Sebree Independent School District into the county district, the County Board of Education, on April 19, 1956, adopted an order changing its division boundaries, as heretofore described.

The trial court was of opinion that the prohibition against changing the boundary within five years started January 1, 1959, so that that provision was no bar to a redivision. As we construe the statute, the intention of the Legislature was that where there had been a merger of an inde-

pendent school district with the county district, the county board should redivide its territory to take care of the increased constituency. Therefore, when the Sebree school came into the county system, it was proper for the county board to do as it did in April, 1956. We regard that date as the commencement of a new five year period of stability, which may be opened up, however, in the event of another merger.

■■ The statutory power is vested in the Board of Education and not in the circuit court. We do not think the court in the present case had power to require the County Board of Education to redivide its district within the five year period following April 19, 1956. We do not regard the Marion County cases as authority for doing so. See Wooley v. Spalding, Ky., 293 S.W.2d 563; Spalding v. Wooley, Ky., 309 S.W.2d 42.

On the direct appeal the judgment is affirmed. On the cross-appeal the part of the judgment complained of therein is reversed.

PALMORE, J., not sitting.