Rex **COPPAGE**, James Huff, Roy D. Reardon, and Angila Staples, Appellants,

v.

**OHIO COUNTY BOARD OF EDUCATION** by and through its members Linda LIKINS, Sara Hall, Earnest Whitely, Valkye Addington, and Lynell Funk; Grover "Butch" Canty, Superintendent of the Ohio County School District; Thomas H. Boysen, Commissioner of Education; the State Board of Elementary and Secondary Education; and the Kentucky School Facilities Construction Commission, Appellees.

No. 91–CA–2064–MR.

Court of Appeals of Kentucky.

Aug. 7, 1992.

Discretionary Review Denied by Supreme Court March 12, 1993.

Herbert D. Liebman, Phillip J. Shepherd, Frankfort, for appellants.

F.C. Bryan, William H. Fogle, Mt. Sterling, for appellees Ohio Co. Bd. of Ed. by and through its members Likins, Hall, Whitely, Addington and Funk, and Superintendent Canty.

J. Gary Bale, Frankfort, for appellees Boysen and Bd. of Elementary & Secondary Educ.

Charles D. Wickliffe, Frankfort, for appellee Ky. School Facilities.

Before GARDNER, HAYES and HOWERTON, JJ.

GARDNER, Judge:

Appellants appeal from a Franklin Circuit Court summary judgment order upholding the Ohio County Board of Education's decision to close Fordsville High School and consolidate it with the county's other high school.

The appellants are citizens, taxpayers, and parents of school age children in Ohio County. They brought this action, challenging the school's closing, against the members of the Ohio County School Board (the board) and its superintendent, the State Board of Elementary and Secondary Education and the Commissioner of Education as well as the Kentucky School Facilities Construction Commission.

Since 1965, the board had operated two high schools in the county, Fordsville High School (the school) in the northern portion of the county and Ohio County High School in the south-central portion of the county. The latter is a modern, well-equipped facility, while the former is much older and does not have enough space to adequately house all students. The board had planned from the 1960s until the late 1980s to build a new high school in the northern portion of the county to replace the school. Due to a declining overall student population, the high cost of maintaining two high schools, and other factors, the board decided to investigate closing the school and bussing its students to Ohio County High School. After studying the plan and consulting with state officials, the board formally voted on June 12, 1989, to abandon the earlier plan and close grades seven to twelve at the school effective July 1, 1990. The board held several other meetings and hearings regarding the new proposed facilities plan, and the state board, on November 15, 1989, adopted the closing of the school as an acceptable plan for the Ohio County School System.

On April 16, 1990, the appellants filed a complaint in the circuit court seeking a ruling that the board's decision to close the school was arbitrary and capricious, violative of constitutional provisions, and of no effect. They also sought a restraining order keeping the school open during the pendency of the ac-

tion. They additionally requested temporary and permanent injunctions to reopen the survey of school facilities, and to prohibit any action forcing students to be bussed to Ohio County High School. The appellants also maintained that the June 12, 1989 meeting was illegally called as no notice was given to the public. The circuit court, after a hearing, issued a restraining order on April 16, 1990, prohibiting the appellees from taking any action to implement the closing of the school. Appellees moved to dissolve the restraining order, and after several hearings, the circuit court, on July 20, 1990, entered a temporary injunction directing the board to reconsider its order closing the school in an open meeting with adequate public notice and enjoining the board from closing the school or bussing students until the open meeting was held. The injunction also directed the state department of education to conduct a new facilities survey.

Following the issuance of the injunction, the board issued a press release to the media advertising a special meeting to be held on August 6, 1990, to discuss the closing of the school. The meeting was held and after hearing citizens' comments, the board voted to close the school effective immediately.

On August 8, 1990, the appellants filed a renewed motion for a restraining order to keep the board from implementing its decision to close the school, and the circuit court granted the motion. On August 17, 1990, the circuit court, after reviewing motions and holding a hearing, entered an order dissolving the restraining order and setting aside the part of the temporary injunction mandatorily enjoining the board from implementing its order to close the school. The appellants then sought injunctive relief from this Court, but such was denied.

Appellants, by leave of the circuit court, subsequently filed an amended complaint. The court, after considering both sides' briefs, entered a summary judgment for the appellees ruling that the board acted properly within its discretion in deciding to close the school. Appellants have brought this appeal.

■ Appellants first claim on appeal that the board's action on August 6, 1990, closing

the school was arbitrary, and thus, violated Sections 2 and 3 of the Kentucky Constitution and appellants' right to due process and equal protection. As part of this argument, they first contend that if the action of the board was legislative, the board's action was invalid because the General Assembly had not clearly granted this power to local school boards, and if indeed the local boards had this power, the General Assembly had given the boards too much unbridled discretion in violation of Sections 27 and 28 of the Kentucky Constitution. This argument lacks merit.

The Kentucky General Assembly clearly has given local school boards the power and authority to close schools and consolidate schools within a local system. Kentucky Revised Statute (KRS) 160.160 establishes the local boards of education and gives them power to act while KRS 160.290 provides in part:

(1) Each board of education shall have general control and management of the public schools in its district and may establish schools and provide for courses and other services as it deems necessary for the promotion of education and the general health and welfare of pupils, consistent with the administrative regulations of the State Board for Elementary and Secondary Education. Each board shall have control and management of all school funds and all public school property of its district and may use its funds and property to promote public education.

We do not believe that the above statutes give the local school boards too much unbridled legislative discretion and thus, do not violate Sections 27 and 28 of the Kentucky Constitution. The former Court of Appeals in *Butler v. United Cerebral Palsy of Northern Kentucky, Inc.*, Ky., 352 S.W.2d 203 (1961), adopted the safeguards approach in reviewing possible excessive delegation problems. The court specifically held that the General Assembly will be allowed to delegate certain authorities to agencies or local boards provided there are adequate safeguards such as judicial review, final approval by state officials, and expertise by the decision maker

to ensure against arbitrary and unreasonable decisions. A primary right of judicial appeal is an adequate safeguard. *Kentucky Milk Marketing and Anti–Monopoly Commission v. The Borden Company,* Ky., 456 S.W.2d 831, 837 (1970). Delegation is necessary, because in some instances the General Assembly has neither the time, facilities, nor qualifications to make such decisions. *Butler,* 352 S.W.2d at 208.

We believe the local school boards must be able to make decisions about closing schools within their districts. The General Assembly could not possibly make all such decisions, and the local boards are usually in the best position to make such decisions. There are adequate safeguards to ensure that the local board does not act arbitrarily since the affected citizens may bring judicial actions to contest the board's actions and under our case law, the local board must review the plan with state officials before closing schools. *See Pike County Board of Education v. Ford,* Ky., 279 S.W.2d 245, 248 (1955); *Justice v. Clemons,* 308 Ky. 820, 215 S.W.2d 992, 993 (1948).

■ Appellants, as part of their first argument, contend that the board's action was quasi-judicial and subject to the constraints of due process of law. Specifically, they claim the board singled out one segment of the county for adverse action, so these constraints apply. They contend that the board acted arbitrarily, in violation of Sections 2 and 3 of the Kentucky Constitution. Their argument must fail.

The decision to close the school and transport its students to other schools was a matter involving legislative facts rather than adjudicative facts, because the board's decision affected the overall school system, not just a few individuals. As a result, the standards involving adjudicative facts and quasi-judicial opinions do not apply. Therefore, *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n.,* Ky., 379 S.W.2d 450 (1964); *Utility Regulatory Comm. v. Kentucky Water Service Corp.,* Ky.App., 642 S.W.2d 591 (1982); *Dolan v. Shoppers Village Liquors No. 2, Inc.,* Ky., 492 S.W.2d 201 (1973); *Wagner v. Dept. of Education, State Personnel Board,* Ky., 549 S.W.2d 300 (1977), and other cases cited by appellants are not applicable to the instant case. In fact, *City of Louisville v. McDonald,* Ky., 470 S.W.2d 173 (1971), cited by appellants, states that if a board's decision applies to the general community, it is a legislative or policy making decision, and should not be disturbed unless there is no rational basis for the decision.

■ The Kentucky courts have long held that the wisdom of a local school board's decision to close or consolidate individual schools is a matter of quasi-legislative or administrative discretion. *Wells v. Board of Education of Mercer County,* Ky., 289 S.W.2d 492, 494 (1956). The board must act in good faith, upon a sound, just and reasonable basis, and have due regard for the public interest and consequences of its actions upon the children affected. *Id.* If the board's action rests upon reasons so unsubstantial, or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected. *Id.* Courts will not generally reverse the board unless the board has abused its discretion. *Id. See also Porter v. Bullitt County Board of Education,* Ky., 433 S.W.2d 126 (1968); *Pike County Board of Education,* 279 S.W.2d at 247.

■ Under KRS 160.160 and 160.290, county school boards have discretion in establishing schools and selecting school sites, however, they must seek the advice of state education officials. *Pike County Board of Education,* 279 S.W.2d at 247; *Justice,* 215 S.W.2d at 993. Reviewing courts must not decide what is best for the school system by substituting their decisions for those of the local school board. *Id. See Brown v. Hardin County Board of Education,* Ky., 358 S.W.2d 488 (1962); *Stull v. Webster County Board of Education,* Ky., 339 S.W.2d 189 (1960); *Browning v. Board of Education of Fairview Independent School District of Boyd County,* Ky., 291 S.W.2d 17 (1956). The courts should not interfere with the administration of internal affairs of a school system except in extraordinary circumstances. *Skinner v. Board of Education of*

*McCracken County,* Ky., 487 S.W.2d 903, 905 (1972).

In general, a summary judgment should be entered if the pleadings and all discovery documents filed show that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Kentucky Rule of Civil Procedure (CR) 56.03. The record must be viewed in a light most favorable to the party opposing the motion, and all doubts are to be resolved in his favor. *Steelvest Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 480 (1991). A trial court must only grant a motion for summary judgment if it appears that it would be impossible for the respondent to produce evidence warranting a favorable judgment against the movant. *Id.* See *Paintsville Hospital Co. v. Rose,* Ky., 683 S.W.2d 255 (1985).

In the instant case, the circuit court correctly applied the above standards of law in entering a summary judgment for the appellees. The board's decision to close the school was supported by a long line of case law. The record shows that the board had studied the problem regarding its high schools, analyzed the conditions of both schools, the possible transportation routes, and the costs of keeping both schools open. After hearing public comment, the board decided to close the school. We find no indication of arbitrariness or abuse of discretion by the school board.

Appellants next argue that the school board's minutes reflect no consideration of House Bill 940, now KRS 157.420, thus making the board's decision arbitrary. We have reviewed the record and find that this argument also lacks merit.

KRS 157.420(6) states that in surveying the schools, the Department of Education shall designate each school facility as a permanent, functional, or transitional center. Appellants contend that the school in question was eligible to continue as a functional center, and the board was authorized to expend school construction funds to upgrade the facility. A functional center is a center which does not meet all the criteria established for a permanent facility, but is ade-quate to meet accreditation program standards to insure no substantial academic or building deficiency. KRS 157.420(6)(b).

The record reveals that the board considered the primary concerns addressed by KRS 157.420(6) in its discussions and final decision regarding closing the school. The local school superintendent, in his report to the board, indicated that the State Facilities Plan had recommended the closing. He noted that additional classroom space was needed at the school, because students were being housed in corridors and mobile units. The board and state officials specifically studied the costs of renovating the school or building a new high school in northern Ohio County, the dwindling student population in that area, the inability to offer a full curriculum, as well as other factors in deciding to close the school. The state adopted the county's proposed plan. Thus, although the board may not have specifically referred to the school as a possible "functional center", it clearly considered all ramifications of keeping the school open. The board's decision was not arbitrary.

Appellants further argue that the board's decision was not valid, because the school board failed to comply with the Open Meetings Act and KRS 160.270. After reviewing the record, we believe that the board complied with all applicable statutes regarding notice of the August 6, 1990, meeting.

KRS 61.825(1), part of the Open Meetings Act, states that a special meeting may be called by delivering notice to each member of the public agency and to each local newspaper of general circulation, each news service and each local radio or television station which has on file with the public agency, a written request to be notified. The notice must be delivered personally or by mail at least twenty-four hours prior to the time of the meeting. KRS 160.270 states that each board of education shall hold at least one regular meeting each month at a time and place fixed by the board, and each board member shall have timely notice of any special meetings.

In this case, the board at its July 9, 1990, meeting unanimously adopted a resolution

changing the regular August 13, 1990 regular meeting to August 6, 1990. The board noted at its August 6 meeting that a press release concerning the meeting had been distributed to each local newspaper, radio and television station with a request on file. The record also contains an actual newspaper article from August 2, 1990, that clearly states the date, time, and purpose of the August 6 meeting. Additionally, citizens came to the August 6 meeting and spoke out on the issue, and all board members were in attendance. There has been no positive showing that the local superintendent and board had decided any matters regarding closing the school in closed session. As a result of all these facts, the circuit court correctly found that no violations of meeting statutes occurred.

■ Finally, appellants argue that the minutes of the board reflect that the board had no regulations or policy putting the public on notice of the rules for allowing citizens to have meaningful input into school board decisions, and that the notice of the August 6, 1990, meeting was defective in this regard. We must disagree.

Appellants have cited to no statutes, cases, or authorities to support their contention that the absence of regulations promulgated by a local school board, to govern the closing of local schools and the methods by which citizens may address a local board at meetings, is grounds for reversing the board's decision. As earlier stated in this opinion, in deciding to close a school, the board must act in good faith weighing all of the evidence in making each decision. In the instant case, the notice of the August 6, 1990, meeting published on August 2, 1990, clearly stated that anyone wishing to speak regarding the school closing should notify the board as soon as possible and that groups sharing the same concerns should appoint a spokesperson, who would be limited to five minutes. This clearly explained the speaking procedure. Additionally, we believe that the August 6 meeting notice was not defective as it was published at least four days prior to the meeting and met all statutory requirements.

For the foregoing reasons, the Franklin Circuit Court's summary judgment order is affirmed.

All concur.