**Mrs. Charles WOOLEY et al., Appellants,**

v.

**Hugh C. SPALDING, Superintendent of Schools of Marion County, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

June 22, 1956.

Rehearing Denied Oct. 5, 1956.

**564**

John C. Anggelis, Lexington, Jesse K. Lewis, Lexington, for appellants.

Dailey & Fowler, Frankfort, J. D. Buckman, Jr., Atty. Gen., W. Owen Keller, Asst. Atty. Gen., for appellees.

WADDILL, Commissioner.

In 1954, the Marion County Board of Education discontinued the Bradfordville High School and arranged for the pupils in that area to attend the Lebanon High School. Its action was based upon the fact that the enrollment at the Bradfordville High School had fallen below the minimum standard of one hundred students which is necessary for an accredited four-year high school under a proposed regulation of the State Department of Education. The proposed regulation has since been adopted.

This action was instituted by certain citizens and taxpayers of Marion County against the Marion County School Board, County School Superintendent, State Board of Education and the Superintendent of Public Instruction, seeking an injunction to prohibit the defendants from continuing to expend public school funds in certain alleged illegal ways and to prohibit religious and sectarian instruction from being given in the public schools. Also, a mandatory injunction was sought directing that the Bradfordville High School be reopened and adequately operated and maintained. The circuit court heard much proof on the issues raised, denied the relief prayed for and dismissed the action. We review the proceedings on this appeal.

Appellants assert that the Marion County School Board (composed of three Catholic members and two Protestants, which employs the County School Superintendent, also a Catholic) has arbitrarily discriminated against Bradfordville High School in favor of other high schools in Marion County, particularly the Saint Charles High School, so as to effectually reduce and substantially eliminate the enrollment of pupils at the Bradfordville High School.

As we are immediately concerned with the situation as it existed in 1953 when the Bradfordville High School was closed by the county board of education, it is necessary to briefly examine the pertinent history of the educational system of Marion County. Prior to 1954, the county had three county high schools, all within the county school district; Bradfordville in the southeastern section of the county, and Saint Charles and Saint Francis in the northwestern part of the county. The Lebanon High School is located near the center of the county and is in a separate independent city school district.

The Bradfordville and the Saint Charles High Schools were established in 1936, and had enrollments of approximately one hundred pupils. The enrollment of Bradfordville remained fairly constant until recent years when its number of pupils dwindled to sixty-two students in 1953. The enrollment at Saint Charles has increased. In 1953 the enrollment was 271. Both schools originally had a full curriculum, including agriculture and home economics, but these courses were discontinued at Bradfordville in 1942 and have not been taught there

since, except in 1947. The Saint Francis High School was established in 1953 at Loretto, approximately six miles from Saint Charles. Both Saint Charles and Saint Francis are principally staffed by Catholic Nuns.

The objection made by appellants to the practice of employing nuns who teach in their religious garb, has been previously determined in Rawlings v. Butler, Ky., 290 S.W.2d 801.

■ The fundamental mandate of the Constitution and Statutes of Kentucky is that there shall be equality and that all public schools shall be nonpartisan and nonsectarian. Ky.Const., Secs. 3, 59, Par. 25, 186, 187, 189; KRS Chs. 157 and 158.

■ Uniformity does not require equal classification but it does demand that there shall be a substantially uniform system and equal school facilities without discrimination as between different sections of a district or county. 47 Am.Jur., Schools, Secs. 10, 90; 78 C.J.S., Schools and School Districts, § 13 b.

■ While we have many times recognized the discretionary power of a school board with respect to matters within its province, at the same time, in accord with all other courts, we have recognized the right of taxpayers and patrons of schools to challenge the action of the school authorities and declared the power of the courts to intervene when it appears that a board has abused a reasonable discretion and acted arbitrarily or capriciously or as the result of improper influence. When a board of education disregards or threatens to disregard the mandates and the requirements and provisions of the constitution or the statutes, the courts will compel performance of a plain duty. Wilson v. Graves County Board of Education, 307 Ky. 203, 210 S.W.2d 350; Knott County Board of Education v. Martin, 256 Ky. 515, 76 S.W. 2d 601; 79 C.J.S., Schools and School Districts, § 414.

■ We have further held that county boards of education have broad discretion in the selection of school sites and in discontinuing the operation of schools. However, we have also said that its action is reviewable by the courts, and if found to be arbitrary, or in excess of its power, it will not be upheld. Pike County Board of Education v. Ford, Ky., 279 S.W.2d 245; Bell County Board of Education v. Wilson, 263 Ky. 556, 92 S.W.2d 821.

A review of the system and practices established and maintained by the Marion County Board of Education shows that the mandate of the constitution and statutes that there shall be no discrimination has not been observed.

■ We first consider the question of whether or not the circuit court erred in refusing to grant a mandatory injunction compelling the re-establishment of Bradfordville High School. The testimony and exhibits appearing in this case convince us that the action of the Marion County Board of Education in closing the high school at Bradfordville, without providing equal and uniform educational opportunities for children living in the eastern section of the county with those who live in the western part of the county, is clearly arbitrary, discriminatory and in violation of KRS 158.010. Consequently the circuit court's findings to the contrary were clearly erroneous.

To hold otherwise, we would in effect be sanctioning a system of educational administration that would deprive the residents of the entire eastern part of the county of their fair share of public funds spent for high school facilities in Marion County, and we would also have to affix our stamp of approval upon a method of education in this county which now operates two high schools in the western section of the county six miles apart and none in the entire eastern half of the county. Under the particular facts of this case, this constitutes a violation of both the spirit and intent of section 183 of our State Constitution.

The single act of closing the Bradfordville High School, in view of the proposed state regulation, may have been prima facie a proper exercise of power that is vested in the school authorities. But to reach that conclusion we must isolate this one act of the local school authorities from its course of action through the years and dismiss from consideration the fact that the condition of the Bradfordville High School at the time it was ordered discontinued appears to be the result of many arbitrary and discriminatory acts on the part of the local school board. The board cannot arbitrarily cause a school to become substandard, and then defend its action in this respect on the ground that its course of conduct was necessary.

Since it would be impractical to incorporate into this opinion a detailed recital and analysis of the particular facts upon which we find the pattern of action of the board was arbitrary and discriminating, we think it should suffice to point out the following situations. It is apparent that such subjects as agriculture, home economics and commercial courses are extremely important parts of the modern school curriculum. However, none of these courses were offered at the Bradfordville School, while all of these subjects are taught at the Saint Charles School under the most favorable circumstances and with the use of modern equipment. The school board contends that it was unable to procure instructors. This may have been true during the years of the last World War. However, during the several years next preceding the closing of the Bradfordville School, the efforts of the school board in planning the curriculum and seeking needed instructors for the Bradfordville School are far from convincing on the element of good faith.

The exact figures of all expenditures made in connection with the operations of the three county schools are not presented. However, the record indicates that in 1951 a total of $475 was spent by the county board on laboratory equipment for the Bradfordville School, while $8,106 was expended for similar equipment for the Saint Charles School. Other examples of discrimination are available.

Such instances of favoritism would tend to destroy the enrollment of pupils at the Bradfordville High School because its students would go elsewhere in search of an adequate education. This is not the type of *uniform* system of schools contemplated by KRS 158.010. Nor is it a character of operation that provides for an *efficient* system of public schools. Kentucky Constitution, Section 183.

We consider the transportation system which the county school board has approved to convey the pupils to their schools. The over-all picture of school bus routes was clearly presented by the exhibits and it indicates to us a situation unfavorable to the students residing in the Bradfordville area. For instance, the children from the Calvary community, a predominantly Catholic area, who are geographically near Bradfordville, are transported approximately eleven miles in school busses from that area through Lebanon and beyond to the Saint Charles High School. Generally, the county school transportation system in the western part of the county is designed and utilized to transport Catholic students to Saint Charles or Saint Francis, and to convey the children who adhere to the Protestant religion, and who reside near Saint Charles, to the Lebanon School even though the Lebanon School is in another independent school district, where their tuition is paid by the county board of education. In the eastern section of Marion County, where no high school facilities are now available, the transportation pattern presents similar practices as those we have pointed out with reference to the western section of the county.

Upon this phase of the case we conclude that the County Board of Education of Marion County acted arbitrarily, capriciously and in excess of its lawful power in ordering the discontinuance of the Bradfordville High School without providing an

efficient and uniform system of public schools within Marion County. We direct the circuit court to issue an injunction requiring the County Board of Education and the Superintendent of County Schools, as soon as practicable, to establish a high school system that will afford all children in the county equal educational opportunities. So long as the board of education chooses to continue a system of regional or area high schools, compliance with the injunction will require re-establishment of a four-year high school in the eastern section of the county. However, the board will have the alternative of compliance by establishing a system based on a centrally located county high school. The circuit court may consider all problems that may arise in effectuating good faith compliance with the court's order. During this period of transition, the circuit court will retain jurisdiction of the case.

■ Appellants also sought an injunction against the teaching of sectarian religious doctrine in the public schools of their county. The circuit court's findings indicate that there have been certain practices calculated to exercise a religious influence upon the students. The evidence shows that substantially all of the periodicals in the Saint Charles High School library were Catholic periodicals, which is a violation of KRS 158.190, and that sectarian literature had on certain occasions been distributed. The students attending Saint Charles and Saint Francis were released from classes one hour each week to receive "moral instruction" pursuant to KRS 158.220. However, the evidence strongly indicates that the students received sectarian religious training during these periods. In view of the insufficiency of proof on the question of whether or not the defendants are permitting religious instruction in the schools of Marion County under the "released time" arrangement, we shall refrain from directly passing upon its legality. However, the Supreme Court of the United States has considered the "released time" arrangement in cases originating in New York and Illinois, and those decisions must be respected and followed. See, Zorach v. Clauson, 1952, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954; People of State of Illinois ex rel. McCullum v. Board of Education, 1948, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 648, 2 A.L.R.2d 1338.

It also appears the Saint Charles and Saint Francis High Schools were closed on Catholic Holidays and the school busses to those areas did not run. This action prevented the Protestant children from those areas who were transported to Lebanon, from attending school on those days.

Although finding that such practices existed, the circuit court refused to issue an injunction, holding that an injunction issued by the circuit court in the case of Wayman v. Board of Education of Marion County in 1944 afforded plaintiffs an adequate remedy.

In view of the lapse of time since the issuance of that injunction, the fact that violations have occurred continuously, and the further fact that certain unlawful acts shown by this record could not be punished under the existing injunction, we find that an injunction should have been issued by the circuit court. The injunction that will issue shall prohibit the defendants from: (1) Violating KRS 158.190; (2) expending public school funds for religious or sectarian purposes; (3) keeping sectarian periodicals in and about the libraries of the county schools; and, (4) stopping the operating of public school busses on religious holidays not legalized as state or national holidays.

It seems to us that the entire county system of schools should be reorganized so as to produce substantial equality of the several sections of the county and to abolish sectarianism in all parts thereof.

Wherefore, the judgment is reversed, and the case is remanded to the Franklin Circuit Court with directions to enter a judgment granting a mandatory injunction requiring the Board of Education of Marion County and the County Superintendent of

Schools of Marion County to re-establish, as soon as practicable, a high school system that will afford all children in Marion County equal educational opportunities; and to also grant an injunction prohibiting the defendants from violating our laws as hereinabove specifically pointed out.