Mrs. Charles WOOLEY et al., Appellants,

v.

Hugh C. SPALDING, Superintendent of Schools of Marion County, Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 30, 1962.

Rehearing Denied March 22, 1963.

Jesse K. Lewis (now deceased), John C. Anggelis, Lexington, for appellants.

Ben B. Fowler, Clifford E. Smith, Frankfort, for appellees.

CULLEN, Commissioner.

This is the third appeal in an action commenced in 1954 by citizens and taxpayers of Marion County seeking to enjoin various practices in the operation of the county school system and to secure within that system equal and uniform educational opportunities for the children residing in the different sections of the county school district. See Wooley v. Spalding, Ky.1956, 293 S.W.2d 563, and Spalding v. Wooley, Ky.1958, 309 S.W.2d 42, which in lieu of repetitious citation herein we shall call the first and second opinions.

A proposed merger of the county school system with the Lebanon independent system, approved by the State Board of Education, has brought into the case factors not presented for consideration in the prior appeals.

The gist of the first opinion is that the St. Charles and St. Francis high schools in the predominately Roman Catholic western part of the county were in effect being operated as quasi-parochial schools with public funds and that the school board had arbitrarily and unlawfully discriminated against the citizens of the largely Protestant eastern part of the county by closing the high school at Bradfordsville and sending their children (that is, those who did

not wish to go to St. Charles or St. Francis) to the independent city high school in Lebanon. It directed the discontinuance of those practices found to be sectarian in nature, and therefore illegal, and the re-establishment of "a high school system that will afford all children in Marion County equal educational opportunities." The latter mandate was to be carried out in one of two ways, (a) "So long as the board of education chooses to continue a system of regional or area high schools, * * * (by) re-establishment of a four-year high school in the eastern section of the county," or (b) by establishment of a system based on a centrally located high school.

Upon remand of the case the Franklin Circuit Court entered a judgment requiring the board to construct and thereafter maintain in or near the city of Lebanon (the county seat) a central high school for all county students and to discontinue the St. Charles and St. Francis high schools by September 1, 1959. On appeal and cross-appeal by the respective parties our second opinion affirmed this judgment with certain modifications, including the following:

"If, after exerting all reasonable efforts and exploring all reasonable prospects it appears convincingly that the construction of a central high school is financially impossible, or that the prescribed time limit for construction cannot be met, the circuit court can modify the judgment as seems necessary."

In May of 1958 the electorate of the Marion County School District rejected a proposal for an additional 50-cent school tax under KRS 160.477. Nevertheless, the county school board, persevering in its efforts to carry out the judgment, acquired a centrally located site at the edge of Lebanon and engaged an architect to prepare alternate designs for a school building to serve the entire district and a smaller one to serve as a regional high school for the eastern part of the county. Meanwhile it became manifest that new facilities could not be constructed and made ready by September 1, 1959, and in April of that year the board moved that the judgment of the circuit court be modified to extend the time. In responding to this motion the plaintiffs asserted (1) that a new central high school building would cost $1,000,000 and that the maximum available bonding capacity of the school district was only $400,000, (2) that it was financially impossible to construct a new central high school, and, therefore, (3) that the only modification of the judgment permissible under our second opinion was a direction to improve and add to the facilities at Bradfordsville so as to make it a regional school for the eastern part of the county. They so moved.

The result of the counter-motions was an "Order Modifying Judgment" entered on April 23, 1959, in which the existing judgment was reiterated and affirmed in all respects except that the time given to the county board in which to get a single central high school in operation and close down the St. Charles and St. Francis high schools was extended to September 1, 1960. The board then proceeded with its plans and in August of 1959 took bids on the alternate plans, though the order of April 23, 1959, by categorically repeating the language of the judgment with respect to a single facility "for all high school students in Marion County," had necessarily excluded any possible authorization at this time for a regional high school.

The respective amounts bid were $803,000 and $550,000. The State Board of Education refused to approve either plan, because in its opinion the maximum available bonding capacity of the county school district was but $475,000. (We use the word "available" to indicate the bonding capacity over and above existing revenue bond obligations.) However, in view of increased appropriations made by the 1960 legislature for educational improvements the state board in May of 1960 revised its estimate to $550,000, and at this juncture the adversary parties again presented counter-motions, plaintiffs demanding that the Bradfordsville high school be re-established and de-

fendants that the judgment be modified to permit construction of a *regional* high school on the site theretofore acquired at the outskirts of Lebanon.

While the foregoing motions were pending there was a change in judges for the Franklin Circuit Court pursuant to the 1960 legislation constituting Franklin County a single judicial district (c. 170, Acts of 1960), and the September 1, 1960, deadline existing under the order of April 23, 1959, evidently passed by without a further extension. Be that as it may, the motions were at length resolved by an order entered on December 2, 1960, granting a further extension and reciting (a) that "for the present" it was "an apparent fiscal impossibility for the defendants to proceed with development of an adequate central county high school," (b) that the inference to be drawn from our second opinion was contrary to a re-opening of the Bradfordsville school, and (c) that in order to carry out the previous mandates of this court it was necessary to approve the construction of a regional high school for the eastern portion of the county according to the plan of the defendants, which was, of course, to locate it on the site at the edge of Lebanon. It was so ordered.

■ Now, the upshot of the controversy as it comes before us on the present appeal is this: Just as the county school board was about to receive new bids on the regional high school to be located at the site near Lebanon, the Lebanon city school district intervened, proposing a merger with the county school district, which after preliminary sparring has been agreed on by the two boards and recommended by the state board, subject to the approval of the court. In an excellent and thoughtful "Opinion, Findings of Fact, Conclusion of Law and Final Judgment" the circuit court approved the proposal over the objections of the plaintiffs, who thereupon brought this appeal.

The plan is that the existing facilities of Lebanon city high school will be improved and expanded to serve the approximately 400 high school students of Lebanon and the eastern part of Marion County. The high school at St. Francis, which is located in leased premises, will be discontinued and the one at St. Charles will serve the approximately 500 high school pupils of the western part of Marion County. The programs, facilities and operation of the two high schools are to be substantially equal in all respects. A new elementary school will be constructed in the city of Lebanon. The city independent school district will be merged in the county district and thereby cease to exist. The new county district will then have an available bonding capacity of $875,000, which will be reduced some $400,000 by the two construction projects mentioned, leaving ample capacity to finance further improvements.

The question presented is whether the foregoing plan satisfies the mandates of this Court on the first and second appeals.

As concerns the one option granted in the first opinion, and directed in the second opinion to be exercised if possible, namely, to establish one central high school for the entire county district, it is our opinion that the record supports the conclusion that all reasonable efforts have been exerted and all reasonable prospects explored, but nevertheless the construction of a central school is financially impossible.

This leaves the second option, "re-establishment of a four-year high school in the eastern section of the county." Wooley v. Spalding, Ky., 293 S.W.2d 563 at 567.

In considering whether the proposed plan conforms to the second option it must be kept in mind that the basic requirement laid down by our former opinions was the furnishing of equal educational opportunities. This embraces equality of programs, curricula and facilities, equality in expenditure of funds, and equality from the standpoint of accessibility and convenience.

The original tuition arrangement with the city school board which was found un-

satisfactory in our first opinion, and the proposed joint operating agreement with the city school board that was rejected in our second opinion, did not provide any guaranty or assurance of equality in programs, curricula or facilities, nor any satisfactory standards for measuring equality in the expenditure of funds. Under both arrangements the school in Lebanon continued to be a city school geared to the needs and plans of the city school system, and the program and curricula of which were subject to control by the city school board. Expenditures by the county school board for county students attending that school would not have a suitable basis for comparison with expenditures in the maintenance and operation of the St. Charles school.

Under the merger plan, however, the Lebanon school becomes a county school, under sole control of the new board for the merged district. The same standards will be available as to it and the St. Charles school for measuring equality of programs, curricula, facilities and expenditure of funds. Therefore, we concur in the finding of the circuit court that the merger plan is a suitable system for providing equality with respect to programs, curricula, facilities and expenditure of funds.

This leaves only the question of equality from the standpoint of accessibility and convenience. While in the first opinion we stated the requirement as being the establishment of a school "in" the eastern section of the county we were of course concerned only with the selection of a site that would be convenient and accessible to the people living in the eastern part of the county, considering highway conditions and locations.

From the standpoint of travel facilities it appears that a site in the city of Lebanon is perhaps the best that could be selected for the accessibility and convenience of the people living to the northeast and to the southeast of Lebanon. If a site directly east of Lebanon were selected, most of the people living to the northeast and the southeast of the city would be required to go through the city to reach the site. And putting the site in Lebanon will be only slightly less convenient for the people living directly to the east of the city than would be a site a few miles outside the city. On the other hand, to locate the school to the southeast or northeast of Lebanon would be seriously inconvenient for the majority of the people in the eastern part of the county.

We conclude that the merger plan calling for a regional county school in Lebanon satisfies the requirement of a school "in" the eastern part of the county.

A question has arisen concerning continuance of operation of the St. Francis school during the current (1962–63) school year. The original judgment here on appeal directed that operation of the St. Francis school be discontinued permanently after June 30, 1962. On August 30, 1962, pending this appeal, this Court entered an order granting permission to the Judge of the Franklin Circuit Court to hear and determine a motion to modify the judgment so as to permit operation of the school for the 1962–63 school year. The circuit judge did so modify the judgment.

The appellants in this case attempted to take a separate appeal from the modified judgment. An order has been entered dismissing that appeal, because we consider that the judgment continued to be under the jurisdiction of this Court notwithstanding the grant of permission to the circuit judge to make a modification, and the correct procedure to obtain a review of the modified portion of the judgment was to file a supplemental record on the original appeal and to present grounds of review in a supplemental brief.

Despite the irregular procedure, we shall treat the modified portion of the judgment as here for review. But in our opinion it would be entirely impracticable at this stage, during the middle of the school year, to direct closing of the St. Francis school,

even if some basis of error in the modified portion of the judgment could be shown.

The judgment as modified unequivocally requires that the St. Francis school be discontinued permanently on June 30, 1963. This shall be treated as a final and conclusive disposition of the question of further operation of that school.

The judgment is affirmed.

BIRD, MONTGOMERY and PALMORE, JJ., dissenting.

PALMORE, Judge (dissenting).

As an original proposition I would have no dispute with the solution proposed in the latest plan. Perhaps this court erred in its first opinion by assuming an administrative function when it went so far as to lay out specifically what the school board must do instead of simply prohibiting the practices found to be illegal. However, I cannot help but feel that the plaintiffs, who were given to believe in 1956 that they had won their lawsuit, are now having it taken away from them. After six years it seems a little late for the court to tell them it didn't mean what it said.

BIRD, J., joins in this dissent.

MONTGOMERY, Justice (dissenting).

The Marion County Board of Education discontinued the Bradfordsville High School in 1954. That order precipitated this action. The principal question involved throughout this litigation has been whether the students in the eastern half of Marion County should have equal educational opportunities with the students in the western half of the county. Unfortunately, the religious issue has been injected, but it really has no part in the consideration of the case on the merits of the above stated question. Likewise, the Lebanon City School District has intervened in a problem to which it was not originally a party.

This matter has been thoroughly considered over a long period of time. In a unanimous opinion rendered June 22, 1956, the action of the Marion County Board of Education in closing the Bradfordsville High School "without providing equal and uniform educational opportunities for children living in the eastern section of the county with those who live in the western part of the county" was held to be "clearly arbitrary, discriminatory and in violation of KRS 158.010." It was condemned as a violation of Section 183 of the Kentucky Constitution. Wooley v. Spalding, Ky., 293 S.W.2d 563. This matter was reconsidered on petition for rehearing, which was denied October 5, 1956, by a unanimous vote.

In that opinion the circuit court was directed to order the Marion County Board and its superintendent "to re-establish, as soon as practicable, a high school system that will afford all children in Marion County equal educational opportunities." As set forth in the majority opinion, this could be accomplished by maintaining one centrally located high school or two regional high schools.

This matter was again considered in Spalding v. Wooley, Ky., 309 S.W.2d 42, in a unanimous opinion rendered on November 15, 1957. It is summed up in this paragraph, to-wit:

"Our former opinion gave the county board of education a choice between two alternatives. The board did not choose either one. Accordingly, we think it was within the power of the circuit court to make the choice for the board, as the court did in directing the establishment of a single, centrally located high school."

The effect of that decision was to reaffirm the first decision of the Court and to reject a suggested plan similar to the one now approved in the majority opinion. This decision was fully reconsidered and petition for rehearing was denied unanimously on February 7, 1958.

This matter was presented again on appeal, and by unanimous vote in an opinion rendered on June 22, 1962, the previous decisions were upheld. The history of this litigation was fully reviewed therein. It is a petition for rehearing filed on that opinion that has now been sustained and a new majority opinion rendered by a four to three vote. Since the origin of this litigation in 1954, this matter has been considered by this Court on five separate occasions prior to the four to three vote by which the petition for rehearing was sustained. During that period ten judges have participated in the deliberations and have voted in favor of the previous opinions. To put it another way, those ten judges have cast a total accumulation of thirty-five votes, without a dissent, in favor of the first three opinions. By adding the three dissenting votes against the majority opinion, the score now stands thirty-eight to four in favor of the original holding as opposed to the majority opinion.

Throughout this litigation there has been no bona fide effort to carry out the original mandate of this Court by the common sense method of re-establishing a high school at Bradfordsville where there has been a school accessible by paved roads from all of the eastern part of Marion County. The student population to support such school is ample unless transported elsewhere by appellees. Instead, the appellees have ignored this very practical solution of the problem created by them. The problem thus resolves itself into one of whether this Court will enforce its mandate or will permit the Marion County Board of Education to sidestep it with a good stiff arm (to use football terms) and go on its way.

In addition to this disturbing aspect of the case, the majority opinion ignores the law of the case rule, which has had a firm place in the law for many years. If the majority opinion is permitted to stand, it will destroy the stabilizing effect of the law of the case rule, and it will become a rule of convenience with little authority and without respect. It will indeed be a sad day for the Court when it removes this backbone from the body of the law. Respect for the Court and its decisions prompt me to write this dissent.

I thought the original decision in this case was sound. I am still of that opinion and, therefore, cannot agree with the majority opinion.